BOWDEN v. THE BOLING COMPANY

[110 N.C. App. 226 (1993)]

_____

LONNIE R. BOWDEN, EMPLOYEE-PLAINTIFF v. THE BOLING COMPANY, EMPLOYER, THE PMA GROUP, CARRIER, DEFENDANTS

No. 9210IC310

(Filed 18 May 1993)

## 1. Master and Servant § 69.1 (NCI3d) — workers' compensation — temporary total disability — offer of employment refused

The Industrial Commission did not err by concluding that plaintiff is temporarily totally disabled and entitled to compensation where plaintiff was injured when his left arm got caught between the platens of a rocker-bender machine; the heat and weight of the platens caused extensive third-degree burns, as well as severe muscle and nerve damage to the left arm from below the elbow to the base of the fingertips; plaintiff was released for a trial period to a job suitable and safe for a one-armed person; plaintiff was offered three positions; each position involved feeding small pieces of wood into different machines for 90% of an eight-hour shift; plaintiff had operated the machines involved during his years with defendant and testified that operating these machines posed a significant threat to the safety of his right arm; plaintiff's physician concluded that the jobs were not safe because plaintiff believed them to be unsafe; two former employees testified that the machines could not be operated safely by a worker with only one functional arm; and the Industrial Commission concluded that plaintiff has been totally disabled and unable to earn wages since

**BOWDEN v. THE BOLING COMPANY**

[110 N.C. App. 226 (1993)]

the date of his injury. If a person's fear renders the job unsafe, then it is illogical to say that a suitable position has been offered. While the positions offered to plaintiff by defendants may in fact be performed by a person with only one functional arm, the question is whether the jobs could be performed safely by this plaintiff. The evidence presented supports the Industrial Commission's finding.

**Am Jur 2d, Workers' Compensation §§ 380, 381, 709.**

**Right to compensation as affected by refusal to accept, or failure to seek, other employment, or by entering into business for oneself after injury. 63 ALR 1241.**

2. **Master and Servant § 75 (NCI3d) — workers' compensation — further surgical treatment**

There was no error in an Industrial Commission conclusion that further surgical treatment to plaintiff's injured arm was reasonable and necessary within the terms of the Workers' Compensation Act where two doctors offered differing opinions as to the need and potential success of further treatments. The determination of the Commission is conclusive on appeal where the evidence before the Commission is capable of supporting two contrary findings. N.C.G.S. § 97-25.

**Am Jur 2d, Workers' Compensation §§ 380, 381, 709.**

**Right to compensation as affected by refusal to accept, or failure to seek, other employment, or by entering into business for oneself after injury. 63 ALR 1241.**

Appeal by defendant from the Opinion and Award of the Full Commission filed 19 December 1991. Heard in the Court of Appeals 12 February 1993.

*Smith, Helms, Mulliss & Moore, by George D. Kimberly, Jr., for employee-appellee.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Dan M. Hartzog, for employer-appellants.*

WYNN, Judge.

On 8 October 1987, plaintiff, an employee of defendant, The Boling Company, was injured when his left arm got caught between

the plates of a rocker-bender machine. Defendants paid the plaintiff benefits for temporary total disability. On 18 May 1988, defendants filed an application to stop payment of benefits on the grounds that plaintiff had refused suitable employment offered to him by The Boling Company. A hearing was held before Deputy Commissioner William Haigh on 12 July 1989. The Deputy Commissioner filed an opinion and award on 11 September 1990 which ruled that plaintiff was entitled to a continuation of temporary total disability benefits and, further, that the defendants were obligated to compensate plaintiff for any future surgeries performed by Dr. Serafin. From the Full Commission's adoption and affirmation of the award and opinion, defendants appeal. We affirm.

---

The facts pertinent to this appeal are as follows: Plaintiff was 32 years old at the time of his injury. Plaintiff was employed as a machine operator for The Boling Company for approximately eleven years. During that time, he was primarily responsible for operating a rocker-bender machine used to steam and bend pieces of wood for the manufacture of furniture. Plaintiff's injury occurred when the machine collapsed, trapping his left arm between the platens for approximately forty-five minutes. The heat and weight of the platens caused extensive third degree burns, as well as severe muscle and nerve damage to the left arm from above his elbow to the base of his fingertips. Plaintiff underwent treatment at the Burn Unit at North Carolina Memorial Hospital by Dr. H.D. Peterson, receiving multiple debridements and skin grafts of his left arm, wrist and hand.

On 21 March 1988, Dr. Peterson released the plaintiff to return to work for a trial period to a job suitable and safe for a one-armed person. Dr. Peterson also opined that the plaintiff would reach maximum medical improvement in three to six months. Plant supervisors and the plant nurse at The Boling Company determined that three positions were open, suitable and safe for plaintiff to return to work. They prepared written job descriptions of the positions which included: planer operator, double edge trim saw operator and dove-tail foot machine operator. All three positions involved feeding small pieces of wood into different machines for 90% of an eight hour shift. Plaintiff, having worked as a planer operator and double edge trim saw operator during his eleven years at the plant, refused the positions contending that the operation of the machines posed a significant threat to the safety of his

right arm. Plaintiff testified, along with two former employees of The Boling Company, that operation of the machines could not be performed safely by a worker with only one functional arm.

The Boling Company's plant superintendent testified that he had operated all of the machines and had used both arms to do so. The defendants' rehabilitation nurse testified that based upon her observation of the three machines in operation, it was her opinion that the machines could be operated by a person with only one functional arm. Dr. Peterson reviewed the descriptions of the jobs offered to plaintiff and concluded that the jobs were not safe because the plaintiff believed them to be dangerous.

On 11 August 1989, Dr. Peterson rated plaintiff as having a permanent partial impairment equivalent to an above-the-elbow amputation of the left arm — or a 100% disability of the arm. Upon the recommendation of Dr. Peterson, plaintiff was examined by Dr. Donald Serafin at the Duke University Medical Center for a second opinion regarding continued treatment. Dr. Serafin recommended that plaintiff receive several additional surgical procedures including transplants of muscle and nerve tissue to the left arm, as well as tendon and skin grafts.

In the Opinion and Award of Deputy Commissioner Haigh, which was affirmed and adopted by the Full Commission, the following findings of fact were made:

> 7. The three jobs offered by the employer to the plaintiff were not suitable for his capacity, and all of the offered jobs involved the risk of injury to the plaintiff's right upper extremity. The plaintiff's apprehension or fear of performing the jobs tendered by the employer was both reasonable, logical and rational, in that what would be safe for a man with two functional arms would not necessarily be safe for a man with only one functional arm. The plaintiff's response was not a phobic-type response.

> 9. Dr. Serafin recommended that additional surgical procedures be performed to prevent infection and increase the function of the plaintiff's left arm. If successful, the surgeries offered by Dr. Serafin would tend to effect a cure by reason of restoration of muscle function in the plaintiff's left forearm, as well as increasing functional ability of the plaintiff's left

wrist and grip, making the grip more precise and achieving extension of the thumb and fingers.

10. The plaintiff has been examined by two psychologists, and each determined that the plaintiff's intellectual ability and functional I.Q. place him in the mild retardation range. The plaintiff's intellectual ability make him a good candidate for vocational rehabilitation and employment once he reaches the end of the healing period.

12. The plaintiff has not yet reached the end of the healing period . . . . Further Dr. Serafin recommends additional surgical procedures that could tend to effect a cure or give relief.

13. Due to the work related injury and his residual physical limitations, as well as his age, education, prior work experience and functional intellectual ability, the plaintiff has been unable to earn any wages since the accident on October 8, 1987.

From these and other findings the Commission concluded:

1. Based upon the admittedly compensable injury and the residual impairment of the plaintiff's left arm, coupled with the plaintiff's age, education, prior work experience and functional intellectual ability, the plaintiff has been unable to earn wages in any employment since the accident on October 8, 1987 and has been totally disabled since that date.

2. The plaintiff is entitled to compensation at a rate of $167.97 per week since October 8, 1987, and continuing for so long as he remains totally disabled, and so long as he complies with the terms and provisions of the Commission's Order (N.C.G.S. § 97-29).

3. The defendants are responsible for all medical expenses related to the plaintiff's injury on October 8, 1987, and all future medical expenses, . . . which would tend to effect a cure or give relief. (N.C.G.S. § 97-25).

I.

[1] Defendants first contend that the findings of fact made by the Deputy Commissioner and adopted by the Full Commission were not supported by competent evidence and do not justify the legal conclusion that plaintiff has been totally disabled and unable to earn wages since the date of his injury.

To recover under the Workers' Compensation Act, the plaintiff bears the burden of proving the existence and extent of a disability. *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 290 S.E.2d 682 (1982).

> N.C. Gen. Stat. § 97-2(9) defines "disability" as the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." To support a conclusion of disability, the Commission must find: (1) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in the same employment, (2) that the plaintiff was incapable after his injury of earning the same wages he earned before his injury in any other employment and (3) that the plaintiff's incapacity to earn was caused by his injury.

*Hendrix v. Linn-Corriher Corp.*, 317 N.C. 179, 186, 345 S.E.2d 374, 378-79 (1986) (quoting *Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683).

Defendants argue that the plaintiff is not disabled within the meaning of N.C.G.S. § 97-2(9) because they offered him employment consistent with his medical limitations at no reduction in salary and that plaintiff is barred from compensation because he unjustifiably refused the tendered employment suitable to his capacity.

Boling offered to employ plaintiff at no reduction in wage for any one of three positions. The Industrial Commission's specific finding of fact regarding the plaintiff's ability to perform these jobs states, "the three jobs offered by the employer to the plaintiff were not suitable for his capacity, and all of the offered jobs involved the risk of injury to the plaintiff's right upper extremity." The Commission further found that "[d]ue to the work-related injury and his residual physical limitations, as well as his age, education, prior work experience and functional intellectual ability, the plaintiff has been unable to earn any wages since the accident on 8 October 1987."

The authority to find facts necessary for a worker's compensation award is vested exclusively with the Industrial Commission and those findings must be upheld on appeal if supported by any competent evidence, even if there is evidence to the contrary. *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 432, 342 S.E.2d 798, 803 (1986). Thus our review is limited to "two questions of law: (1) whether there was any competent evidence before the Commission to support its findings of fact; and (2) whether the Commission's findings

of fact justify its legal conclusions and ·decision." *Sanderson v.. Northeast Construction Co.*, 77 N.C. App. 117, 120-21, 334 S.E.2d 392, 394 .(1985); *Cratt v. Perdue Farms, Inc.*, 102 N.C. App. 336, 401. S.E.2d 771 (1991).

Cheri Yates, the rehabilitation nurse for defendants, evaluated the three positions offered to plaintiff and determined that all three jobs could be performed safely by a one-armed person. After reviewing descriptions of the positions, Dr. Peterson concluded that "there is no way that I can say· from your analysis of the jobs that they are not dangerous." Further, "if these jobs are absolutely safe, and offer no threat to his right arm, I would certainly put my blessing on them. However, if [plaintiff] fears the machinery that he is working around, there is no way that he can safely return to these jobs." According to Dr. Peterson's testimony, "a safe job [for plaintiff] would be a job that [plaintiff] thought was safe."

According to the job descriptions, each of the positions offered to plaintiff would include potentially operating all three machines: the planer, the double edge trim saw and the foot dove tail machine. Plaintiff testified that during his eleven years at The Boling Company he had operated all three of these machines. Based upon that experience, he determined that operating these machines posed a significant threat to the safety of his right arm and therefore was not safe. Plaintiff offered to return to work for his employer at some other position that would be safe. Mr. Walter L. Cheek and Frankie Wayne Burnette, both former employees of The Boling Company, testified that in their opinion, a person with one functional arm could operate the machines at issue, but that to do so could be dangerous.

Plaintiff argues that operation of the machines by a person with only one functional arm would be unsafe and he is afraid to do so. Defendants argue that even if plaintiff's fear is reasonable, the fear of returning to work after an injury does not render an employee totally disabled under the Workers' Compensation Act. However, we conclude that if a person's fear of returning to work renders the job unsafe for his performance then it is illogical to say that a suitable position has been offered. Although plaintiff may be able to perform work involving the use of his right arm, the availability of positions for a person with one functional arm does not in itself preclude the Commission from making an award for total disability if it finds upon supported evidence

BOWDEN v. THE BOLING COMPANY

[110 N.C. App. 226 (1993)]

that plaintiff because of other preexisting conditions is not qualified to perform the kind of jobs that might be available in the marketplace. *Peoples*, 316 N.C. at 441, 342 S.E.2d at 808. While the positions offered to plaintiff by defendants may in fact be performed by a person with only one functional arm, the question is whether the jobs could be performed safely by this plaintiff. *See id.*

The evidence presented supports the Industrial Commission's finding that plaintiff has been incapable of earning wages since 8 October 1987, and that plaintiff is accordingly entitled to compensation for temporary and total disability pursuant to Section 97-29 until he reaches maximum medical improvement or is no longer totally disabled. Therefore, the Industrial Commission did not err in concluding that the plaintiff is temporarily totally disabled and entitled to compensation.

## II.

[2] By defendants' second and final argument, they contend that the Industrial Commission erred in deciding that further surgical treatment to plaintiff's arm, as suggested by Dr. Serafin, is reasonable and necessary within the terms of the Workers' Compensation Act. The Commission concluded that defendants are responsible pursuant to N.C.G.S. § 97-25, "for all medical expenses related to the plaintiff's injury and all future medical expenses, including treatment or supplies which would tend to effect a cure or give relief." N.C.G.S. § 97-25, further provides that "the Industrial Commission may order such further treatments as may in the discretion of the Commission be necessary."

Defendants point to the testimony of Dr. Peterson as evidence that further treatment to plaintiff's arm is not "necessary." Dr. Peterson testified that plaintiff was effectively healed as of 12 May 1988 having a 100% permanent partial disability. Dr. Peterson subsequently arranged for plaintiff to obtain a second opinion from Dr. Serafin. Dr. Serafin recommended an operation to cover exposed areas of bone by transplanting muscle tissue from plaintiff's thigh to his arm, wrist and hand. He also recommended an additional surgery involving transplants of muscle and nerve tissue to the left arm and a tendon graft to increase the function of his left arm, wrist and hand. When questioned about whether he would recommend the procedures suggested by Dr. Serafin, Dr. Peterson stated that he did not "think that's the best thing to do, but I don't know because I don't have a mangled arm." Dr.

Peterson stated clearly that the decision for further treatment "is up to the patient." Based on Dr. Peterson's testimony, defendants argue that the procedures suggested by Dr. Serafin will not help plaintiff and thus are not necessary. In this case, Dr. Peterson and Dr. Serafin offered differing opinions as to the need and potential success of further treatments for the plaintiff. Where the evidence before the Commission is capable of supporting two contrary findings, the determination of the Commission is conclusive on appeal. *Dolbow v. Holland Indus., Inc.*, 64 N.C. App. 695, 697, 308 S.E.2d 335, 336 (1983), *disc. rev. denied*, 310 N.C. 308, 312 S.E.2d 651 (1984).

For the reasons set forth above, the opinion and award of the Industrial Commission is

Affirmed.

Judges EAGLES and COZORT concur.