The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in an Industrial Commission Form 21, Agreement for Compensation for Disability, approved by the Industrial Commission on 18 February 1993, in a Pre-Trial Agreement, and by post-hearing agreement as:
STIPULATIONS
1. On 25 November 1992, the date of plaintiff's injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant on 25 November 1992.
3. Defendant was a duly qualified self-insured employer.
4. On 25 November 1992, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant.
5. Plaintiff's average weekly wage was $403.00.
6. As a result of his injury by accident, plaintiff was temporarily totally disabled from 26 November 1992 through 3 March 1993. During this period of temporary total disability, plaintiff received compensation at the rate of $268.68 per week.
7. From 24 July 1992 until 25 November 1992, plaintiff earned gross wages totaling $8,137.95.
8. Copies Industrial Commission Forms 21, 22, and 24 are stipulated into evidence.
9. A set of medical records, discovery responses and copies on Industrial Commission forms, received by the Industrial Commission on 15 February 1995 and marked as plaintiff's Exhibits Numbers One through Fifteen, are stipulated into evidence.
10. Sets of plaintiff's medical records from Robeson County EMS, Southeastern General Hospital, Lumberton Surgical Associates, W.R. Caviness, D.D.S., Steven Fredette, D.D.S., S. Owen Smith, D.D.S., Pinehurst Surgical Clinic, Lumberton Chiropractic Center, Maxton Medical Services, Lumberton Radiological Associates, Moore Regional Hospital, and Scotland Memorial Hospital, received by the Industrial Commission on 12 June 1995, are stipulated into evidence.
11. A one page medical report from Dr. John Ellis, received by the Industrial Commission on 14 June 1995, is stipulated into evidence.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-six years old, married, and had a high school education. Plaintiff's work history included a variety of positions in the construction industry. In addition, he had worked as an insurance salesman from 20 September 1979 until 4 July 1986.
2. Plaintiff began working for defendant on 24 July 1992 as a life insurance salesman. In this position, plaintiff traveled in an automobile making door-to-door premium collections and life insurance policy sales. Plaintiff worked between eight and ten hours per day. Plaintiff spent approximately two hours per day in his office. The remainder of his work days was spent making door-to-door calls on existing and potential clients. Plaintiff made between twenty and thirty such calls each day.
3. On 25 November 1995, plaintiff sustained an injury by accident arising out of and in the course of his employment when he was involved in an automobile collision.
4. Plaintiff was transported by ambulance to Southeastern General Hospital in Lumberton, where he received treatment in the emergency room and was admitted for further care. Plaintiff's treating physician in the hospital was Dr. Fredrik Tolin, who diagnosed and treated multiple facial lacerations, left rib fractures of 5, 6 and 7, alveolar ridge fracture of the lower jaw, left bymalleolar fracture, non-displaced distal phalanx fracture of the right index finger and ankle fracture. Plaintiff also complained of back and left shoulder pain in the hospital, and he lost two teeth in the wreck. Plaintiff testified that he felt back pain on the date of the wreck and reported this to hospital personnel. The hospital records confirm that Mr. Locklear complained of back and shoulder pain on November 25 and 29.
5. During his hospitalization, Mr. Locklear was heavily medicated with Morphine, Percocet and Demerol for pain from his multiple injuries. He testified these medications helped alleviate his back pain. The back pain did not resolve itself as Plaintiff's other injuries began to heal, and he reported it to Dr. Fax, who was treating him for his fractured ankle, on January 6, 1993. Dr. Fax's testimony illustrates he was unaware of Plaintiff's prior back symptomatology as first reported in the hospital on the date of injury. Doctor Fax testified he did not read the nurses' notes, which is where back pain is documented in Plaintiff's hospital records. Doctor Fax further admitted he did not treat Mr. Locklear for his back symptoms and never even examined Plaintiff's back. Although Dr. Fax said in his deposition he thought it unlikely Plaintiff's back pain was associated with his work injury, he admitted his opinion might be different if there were complaints of back pain while Plaintiff was in the hospital. The doctor also testified the medications Plaintiff was taking might mask some of his pain.
6. After a six day hospital stay, Plaintiff was discharged and began treatment with Oral Surgeon Robert Caviness for closed reduction of fractures. Dr. Caviness began treatment of Mr. Locklear on December 1, 1992 by wiring his jaw closed. Mr. Locklear remained on a liquid diet for approximately seven weeks, until the wiring was removed on January 19, 1993.
7. Following his discharge from the hospital, Plaintiff was treated by Dr. Nicholas Fax for his broken ankle and fractured finger. Plaintiff mentioned his back pain to Dr. Fax during his second office visit with him on January 6, 1993. Dr. Fax did no physical examination of Plaintiff's back and said he did not think the pain resulted from the wreck. The doctor felt Plaintiff's back pain was related to previous back fractures. Dr. Fax released Plaintiff to return to work without restriction on February 3, 1993, despite Plaintiff's continued complaints of back pain and expressed fear of driving while on medications which made him drowsy.
8. Plaintiff discussed the opinions of Dr. Fax with his rehabilitation nurse and requested a second opinion evaluation on January 19, February 5 and February 9, 1993. Defendants denied authorization for the second opinion evaluation. Plaintiff also discussed his inability to return to work with his nurse, who told him Dr. Fax would need to evaluate him further but who was unable to secure approval for another evaluation from Defendants. Plaintiff also discussed the return to work order with Jimmy Adams, an employee of Defendant employer, and informed him he was unable to work. Shortly thereafter, Plaintiff was fired for failing to return to work, and a Form 24 was filed and approved.
9. Plaintiff continued with dental care, although the treatment eventually terminated when Dentists Smith and Fredette refused to abide by the Industrial Commission's fee schedule. Plaintiff was provided with some dental prosthetics, and he declined to have permanent implants.
10. Plaintiff continued to have back pain, and because he was unable to obtain approval for any treatment from Defendants he directed his own medical care. He first saw John Ellis, M.D, who diagnosed cervical and lumbar strains causally related to the work-related wreck of November 25, 1992. Dr. Ellis treated Plaintiff conservatively and recommended he return to work on April 14, 1993.
11. Following treatment with other providers, Dr. Ellis again evaluated Plaintiff the next year and recommended physical therapy and counseling to help him deal with the effects of the wreck which caused the work injuries. In addition, Plaintiff saw Chiropractor Sherwood Hinson, who also diagnosed strains and attributed the injuries to the work injury. Dr. Hinson rendered an opinion that Mr. Locklear was unable to work until July 2, 1993.
12. Eventually, Plaintiff began a course of treatment with Peter Perryman, M.D., his family physician, who ordered an MRI and diagnosed lumbar disk disease causally related to the work injury in November 1992. Dr. Perryman treated Plaintiff until the doctor's death following the hearing. Dr. Perryman stated in his stipulated notes and reports that Plaintiff was permanently and totally disabled from employment as a result of the injury on November 25, 1992.
13. The parties entered into a Form 21 agreement for compensation on January 21, 1993, which was approved on February 16, 1993. A Form 24 was submitted February 17, 1993 and approved March 5, 1993. Plaintiff was unrepresented by counsel on these dates.
14. Plaintiff presented evidence at the hearing that he requested a second opinion evaluation for his back from his rehabilitation nurse on at least three occasions. Defendants refused to approve this request. Left to direct his own medical care for his back, Plaintiff arranged for an evaluation by John Ellis, M.D. Dr. Ellis wrote in his March 5, 1993 office notes that Mr. Locklear had "suffered cervical and lumbar ligamentous strain from his accident." This medical record is part of the stipulated evidence in this case. Shortly thereafter, Mr. Locklear also sought the care of Sherwood Hinson, D.C., who wrote in the stipulated medical records Plaintiff suffered a 15% permanent partial disability to the spine as a "direct result of the injuries sustained in the automobile [sic] accident on 11/25/92."
15. As Plaintiff's back pain continued over time, he sought further evaluation and treatment from his family doctor, Peter Perryman, M.D. Doctor Perryman died unexpectedly prior to the parties having the opportunity to depose him; however, Plaintiff presented evidence of Dr. Perryman's opinion on causation through two disability claims forms the doctor filled out for Mr. Locklear. On the first, which is dated January 21, 1994, Dr. Perryman wrote that Plaintiff was totally disabled from "low back pain, numbness in legs,? [sic] lumbar disk disease" since "11/25/92." On the second form, which was completed April 11, 1995, Doctor Perryman again said Plaintiff has been totally disabled from "lumbar disk disease" since "11/25/92." Clearly, Dr. Perryman attributes Mr. Locklear's back pain to the work injury, which occurred on November 25, 1992.
16. Plaintiff's evidence of complaints of back pain beginning on the date of injury, accompanied by the opinions of Doctors Ellis, Hinson and Perryman attributing causation of the back pain to the work injury of November 25, 1992 contained in the stipulated medical records, are overwhelming in comparison to the lone opinion of Dr. Fax presented by Defendants. Further, Dr. Fax's testimony is suspect in light of his admission he never examined Plaintiff's back or treated any of the symptoms and that his opinion might be different if he knew of Plaintiff having complained in the hospital of back pain.
17. Plaintiff's testimony at the hearing demonstrates he was unable to return to work when Dr. Fax released him to do so. His ankle was still swollen at this time, he was on crutches, his back was bothering him, and he had not had all of the recommended dental work yet. He was still taking pain medications which made him drowsy, and he was concerned about driving while on those medications. He told his rehabilitation nurse he did not feel able to return to work and was told at first he would be scheduled for another evaluation with Dr. Fax, but Defendants later denied authorization for another visit with Dr. Fax. Mr. Locklear also asked for a second opinion on at least three occasions, which Defendants refused to approve.
18. Rather than attempting to help Plaintiff feel comfortable with a return to work order by allowing him a second opinion or even another visit with Dr. Fax, Defendants simply filed a Form 24 requesting permission to terminate compensation. Plaintiff was not represented by counsel at this time, and the documents Defendants submitted in support of their Form 24 do not document Defendants' denials of Plaintiff's reasons for failing to return to work or his requests for a second opinion. In light of Plaintiff's pro se status and the subsequent findings of Doctors Ellis, Hinson and Perryman that disability continued beyond the return to work order of Dr. Fax, the Full Commission now finds that the order approving the Form 24 was improvidently entered and it is now set aside. Mr. Locklear's failure to return to work was justified.
19. In further support of his continuing total disability, Plaintiff offered his own testimony of constant back pain and inability to engage in activities such as cutting wood, riding his horse, feeding his horse, and playing softball. He also testified that driving aggravates his back pain. Further, he testified that his entire household income consists of his wife's SSI benefits and he would "love to return to work."
20. Moreover, the medical evidence of Dr. Ellis and Chiropractor Hinson further support Plaintiff's failure to return to work when his regular job was offered to him in February 1993. Dr. Ellis released Plaintiff to return to work on April 14, 1993; however, when Dr. Ellis again saw Plaintiff the following year he recommended physical therapy and psychological counseling to help him deal with the wreck in which he was injured and the other driver was killed. Despite these recommendations, Defendants did not authorize the treatment. Further, Chiropractor Ellis released Mr. Locklear to return to light duty work on July 2, 1993; however, Mr. Locklear was never offered light duty work by the Defendant employer, who merely noted that plaintiff's job "cannot be modified as client will need to drive and visit clients in their homes." In fact, Mr. Locklear was terminated on March 5, 1993 prior to his release to return to work by Chiropractor Hinson or Dr. Ellis.
21. Further, Plaintiff's concern about driving while on medications that made him drowsy should be considered. The job description stipulated into evidence establishes his job entailed significant driving. Precedent exists for a finding of continued disability and award of compensation where the Plaintiff-employee's fears of being able to safely perform a job render him unable to do the job safely. See Bowden v. Boling Co., 110 N.C. App. 226,429 S.E.2d 394 (1994). In this situation, the Plaintiff employee's refusal to return to such a position offered by the Defendant employer is not unreasonable. Id. at 232-33, 429 S.E.2d at 398.
22. Additionally, Plaintiff had just completed a several week course of having his jaw wired and was missing several teeth for which he had not yet received dental prosthetics. By Defendants' own admission through the job description filled out by Gordon Turner, Plaintiff's job as a life insurance salesman involved heavy contact with the public. Even if Mr. Locklear had been able to overcome his back pain and return to work, which he was not able to do, his physical appearance prevented him from doing his job. Certainly it is reasonable that an outside salesman who has lost some of his teeth through a work-related injury should be able to have his teeth repaired or replaced prior to returning to work with the public, and Deborah Pate's deposition reflects Mr. Locklear made this request. For Mr. Locklear, the earliest date on which he had some cosmetic repair of his dental damages is March 29, 1993, when he was fitted with temporary partial dental plates by Dentist Smith.
23. Finally, by entering into the Form 21 agreement on January 21, 1993, Defendants bound themselves to its provisions that Plaintiff was totally disabled from working beginning November 25, 1992. N.C. Gen. Stat. § 97-17; Dalton, ___ N.C. App. at ___, 458 S.E.2d at 257. Once this agreement is in place, disability is presumed to continue until the Plaintiff-employee returns to work at the same wages he was receiving on the date of injury. Dalton, Id. at ___, 458 S.E.2d at 257. In order to stop payments pursuant to the Form 21, Defendants must overcome the presumption by showing that Plaintiff is employable. See Dalton,Id. at ___, 458 S.E.2d at 257. Defendants offered no evidence at the hearing that Plaintiff is employable other than the deposition testimony of Dr. Fax, who admitted he had not examined Mr. Locklear's back. There was no evidence Defendant-employer attempted to provide Mr. Locklear with a job he would be able to do with his back pain and other residual symptoms. There was no evidence Defendants offered Mr. Locklear any sort of vocational rehabilitation, job placement assistance, or even counseling such as that Dr. Ellis said plaintiff needed in order to help him deal with the work injury. There was no evidence that plaintiff was able to work at the same wages he was earning on the date of injury. Therefore, because the facts before the Commission illustrate Plaintiff's work-related disability prevented him from returning to work in his previous employment and Defendants failed to present evidence of Plaintiff's employability in other work at his previous wage rate, the Full Commission finds that Plaintiff is entitled to the continuing presumption of disability.
24. The Form 21 agreement signed by Mr. Locklear before he retained counsel and approved by the Commission on February 18, 1993 set forth an average weekly wage of $403.00. This agreement is considered an Award of the Industrial Commission, see N.C.I.C. Workers' Compensation Rule 503, but it may be set aside if based on mutual mistake. N.C. Gen. Stat. § 97-17; Vernon v. Steven L.Mabe Builders, 110 N.C. App. 552, 558, 430 S.E.2d 676, 680 (1993) (§ 97-17 allows an agreement to be set aside where mutual mistake is one of material fact). The Form 22 and testimony of Plaintiff tend to show Plaintiff and Defendants were both mistaken about Plaintiff's average weekly wage at the time the Form 21 agreement was entered. Defendants' Form 22, completed on January 20, 1995, and part of the evidence before the Commission, establishes the correct average weekly wage for earnings of $8,137.95 over 17-5/7 weeks is $459.40. The parties also entered into a post-hearing stipulation "that Plaintiff's total gross wages from July 24, 1992 until November 25, 1992 were $8,137.95." This is supported by Plaintiff's testimony that his wages were $400.00 per week plus commission and were approximately $475.00 per week. Thus, the parties were mistaken in their 1993 agreement that the average weekly wage was $403.00. The Commission finds that the correct average weekly wage was $459.40 per week.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
CONCLUSIONS OF LAW
1. On 25 November 1992, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2(6).
2. Since 25 November 1992 Plaintiff has been disabled because of his compensable injury by accident growing out of his employment with Defendant employer. N.C. Gen. Stat. § 97-2(9); N.C. Gen. Stat. § 97-32; N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from the injury by accident giving rise hereto to the extent said treatment tends to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff's average weekly wage was $459.40, yielding a compensation rate of $306.26.
5. Plaintiff is entitled to temporary total disability compensation benefits at the rate of $306.26 per week commencing 25 November 1992, and continuing barring a change of condition, a return to work or further order of the Industrial Commission as a result of the injury by accident plaintiff sustained on 25 November 1992, subject to a credit awarded defendants for workers compensation benefits received by plaintiff after 25 November 1992.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Hedrick and enters the following:
AWARD
1. Plaintiff is entitled to compensation at the rate of $306.26 per week from 25 November 1992 and continuing subject to a change of condition, return to work or further order of the Industrial Commission for the temporary total disability plaintiff has sustained arising from this injury by accident, subject to a credit awarded defendants for workers compensation benefits paid to plaintiff after 25 November 1992. That portion of this compensation which has accrued shall be paid in a lump sum, subject to an attorney's fee hereinafter approved. Interest on such lump sum at the rate of 8% per year shall be calculated from 21 February 1995 until paid and shall be paid to plaintiff along with the lump sum.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel, the accrued portion of the fee shall be deducted from the accrued benefits, and thereafter, defendants shall forward every fourth check of compensation to plaintiff's counsel until plaintiff is no longer entitled to compensation benefits.
4. Defendants shall pay the costs.
 S/ ______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ COY M. VANCE COMMISSIONER