The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts as those reached by the Deputy Commissioner, with some modification but modifies the conclusions and holding of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On December 31, 1995, the employee-plaintiff suffered a compensable injury by accident arising out of an in the course of his employment.
2. On December 31, 1995, the parties hereto were subject to and bound by the provisions in the North Carolina Workers' Compensation Act.
3. On December 31, 1995, the employer-employee relationship existed between plaintiff and defendant-employer.
4. On December 31, 1995, the defendant-employer employed three (3) or more employees.
5. On December 31, 1995, Howard Johnson's was self-insured for workers' compensation insurance in North Carolina.
6. Defendant's first set of responses to interrogatories marked as stipulated exhibit 5 was received into evidence.
7. Employment records marked as stipulated exhibit 6 were received into evidence. These records are attached to the deposition of Chet Dakoriya.
8. Defendant's amended set of responses to interrogatories marked as stipulated exhibit 7 was received into evidence.
9. Subsequent to the hearing before the Deputy Commissioner, an indexed set of medical records marked as stipulated exhibit 8 was received into evidence.
10. N.C. Industrial Commission Forms 19, 22, 61, and 63 were marked as stipulated exhibits 1, 2, 3 and 4 respectively and were received into evidence.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-four year old male who had earned a Masters Degree in Commerce Accounting while living in India.
2. Plaintiff was employed as a clerk for Bonanza General Store in Las Vegas, Nevada immediately prior to his employment with the defendant-employer. Plaintiff earned $6.00 an hour while employed with the Bonanza General Store. Plaintiff was contacted by Ash Patel, a manager for the Greensboro hotel owned by defendant-employer, who offered plaintiff a job as a night auditor. Mr. Patel was directed by Chet Dakoriya, President of Howard Johnson's, to hire plaintiff. Mr. Patel and plaintiff agreed that plaintiff would receive $200.00 per week plus free room and board. Mr. Dakoriya did not authorize Mr. Patel to offer lodging as a condition of the employment contract. However, it was understood between Mr. Patel and the plaintiff that plaintiff would receive free food and lodging in lieu of wages. Plaintiff agreed to take a reduction in salary as compared to the salary he was earning with Bonanza General Store because he was to receive free room and board. Mr. Patel had apparent authority to offer plaintiff food and lodging in lieu of wages.
3. The Full Commission reopened this matter for additional evidence on the value of the lodging that was provided to the plaintiff in order to calculate the average weekly wage. The parties were unable to stipulate to or provide additional evidence on the reasonable market value of plaintiff's lodging. Therefore, the Commission finds as fact, based upon the stipulated Form 22 Wage Chart, that the value of the lodging provided to the plaintiff was $100.00 per week.
4. At the time that he sustained the compensable injury by accident on December 31, 1995, plaintiff's average weekly wage was $200.00 a week salary plus $100.00 for food and lodging for a total of $300.00. Plaintiff's salary would have been higher if he had secured his own living arrangements.
5. Plaintiff began employment with the defendant-employer on December 16, 1995 as a desk clerk and night auditor.
6. On December 31, 1995, plaintiff was performing his regular job duties as a desk clerk and night auditor when he was robbed at gunpoint. Plaintiff received multiple gunshot wounds in his back, right arm and left thigh. A co-worker was fatally wounded at the same time.
7. On the morning of January 1, 1996, plaintiff was transported to the emergency room at the Carolina Medical Center where he was treated for his multiple gunshot wounds. As a result of these multiple gunshot wounds, plaintiff was hospitalized for the time period beginning January 1, 1996 to January 14, 1996.
8. As a result of the December 31, 1995, compensable injury by accident, plaintiff sustained the following injuries: a left femur multifragmentary fracture secondary to a gunshot wound, a left superficial femoral artery injury secondary to a gunshot wound, a right paraspinous muscle defect secondary to a gunshot wound and a right forearm superficial wound secondary to a gunshot wound.
9. Upon his release from the hospital, plaintiff went to California to stay with his brother. Medical case manager Jo Ann Johnson traveled with plaintiff in a taxi from the hospital to the airport because plaintiff expressed a fear of being alone and being shot again. As a result of his fear, plaintiff declined an offer by the defendant-employer to stay in a room at the hotel where he was injured. He also declined an offer to stay at a hotel owned and operated by the defendant-employer in Greensboro. This offer of housing at this time by the defendant-employer was not an offer in exchange for plaintiff's labor.
10. On January 18, 1996, plaintiff began a course of medical treatment under the supervision of Dr. Steven A. Smith, an orthopedic surgeon in California.
11. On March 26, 1996, Dr. Smith signed a work release form authorizing plaintiff to return to his night auditor position with the restriction that plaintiff could not stand for extended periods of time.
12. There is a dispute between the president for the defendant-employer, Chet Dakoriya, and plaintiff's immediate supervisor, Ash Patel, over who had and continued to have the authority to hire the plaintiff. Mr. Dakoriya testified that Mr. Patel hired plaintiff without his knowledge. On the other hand, Mr. Patel testified that Mr. Dakoriya hired the plaintiff. Mr. Dakoriya testified that it was "kind of an accident" that Mr. Patel extended the offer to allow the plaintiff to live on the premises as part of the offer of employment prior to plaintiff's injury. Mr. Patel testified that Mr. Dakoriya told him to offer the living arrangements as part of the offer of employment.
13. Sometime in late March 1996, Chet Dakoriya offered to allow the plaintiff to return to the night auditor position that he had held at the time that he was shot. Mr. Dakoriya agreed to make accommodations for the plaintiff. Earlier on February 21, 1996, medical case manager Jo Anne Johnson faxed a job description form to Mr. Dakoriya. Mr. Dakoriya did not complete the form in its entirety so Ms. Johnson went to Charlotte and specifically had Ash Patel assist in completing the form. This job description form was reviewed by Dr. Smith who then released plaintiff to return to work as a night auditor with the restrictions of no prolonged standing or walking. Mr. Dakoriya agreed to accommodate these restrictions. The job offered to plaintiff was an offer of suitable employment that took into consideration plaintiff's physical limitations and was not so modified to be considered make-work.
14. At the time the offer was made by Mr. Dakoriya, defendant was not paying any compensation for any wage loss based upon the free room and board that had been made available to plaintiff prior to his injury. Mr. Dakoriya did not offer free food and lodging in lieu of wages to plaintiff if he returned to his former position as a night auditor.
15. Mr. Dakoriya's offer of a night auditor position was communicated by case manager Barbara Matas to plaintiff. Plaintiff refused to return to the night auditor position. Plaintiff testified that he was only offered a janitorial position. Plaintiff's testimony is rejected by the Commission as not credible based upon the contradictory deposition testimony of four other witnesses.
16. Plaintiff did not testify that he was afraid to return to the position offered by the defendant-employer in late March 1996 nor was any evidence presented that plaintiff could not safely perform the night auditor position.
17. On June 1, 1996, plaintiff began working at a temporary accounting and bookkeeping position making $10.00 an hour in a computer dealership. No evidence was presented with regard to the number of hours that he worked.
18. On June 20, 1996, plaintiff quit his employment with the computer dealership, voluntarily removed himself from the job market and went to India in order to take care of sick parents. Plaintiff did not look for employment in India. While in India, plaintiff was physically able to regularly operate a motor scooter. He returned to the United States during December 1996.
19. As of December 30, 1996, plaintiff had reached maximum medical improvement with regard to the injuries he sustained as a result of the gunshot wounds that he received on December 31, 1995.
20. At the time of the close of the record before the Deputy Commissioner, plaintiff had not received any ratings for the compensable injuries that he sustained to his back, right arm and left thigh.
21. During the payment without prejudice time period, defendant underpaid plaintiff $66.67 per week for the time period beginning December 31, 1995 through March 29, 1996, when he refused the proffered employment.
22. On January 14, 1996, defendant began paying plaintiff pursuant to a Form 63, Payment of Compensation Without Prejudice to Later Deny the Claim. Under the unquestionably compensable circumstances in which plaintiff was injured, defendant should have paid plaintiff for his compensable injuries pursuant to either a Form 21 Agreement for Compensation or a Form 60 Employer's Admission of Employee's Right to Compensation. If defendant had used the proper form, defendant would have been required to obtain Commission approval prior to terminating plaintiff's benefits for his compensable injuries. Further, the filing of the proper form with the Commission would have prevented defendant from unilaterally terminating the plaintiff's benefits.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. An employer's use of a Form 63 Payment of Compensation Without Prejudice to Later Deny is permissible in cases in which the employer or insurer is uncertain on reasonable grounds whether the claim is compensable or whether it has liability for the claim. There is no question in the instant case that the plaintiff's claim was a compensable claim and that the defendant was liable for the resulting disability. N.C. Gen. Stat. §§97-2(6) and 97-18(d).
2. Defendant should have filed a Form 21 Agreement for Compensation or a Form 60 Admission of Employee's Right to Compensation, but instead defendant filed a Form 63 Payment of Compensation Without Prejudice to Later Deny the Claim. Defendant's decision to deny plaintiff's claim based on a disagreement over continuing liability during the 90-day period following defendant's notice of the plaintiff's injury was not permissible. Plaintiff should have been allowed the opportunity to be heard on the termination of his benefits pursuant to the Form 24 procedure adopted by the Commission. N.C. Gen. Stat. §§ 97-18(b), 97-18(d) and 97-18.1.
3. Plaintiff unjustifiably refused the March 1996 job offer of a suitable night auditor position with the defendant-employer. Assuming arguendo that plaintiff did not accept this job offer for the position in Charlotte, North Carolina because he was afraid to return to his former position, such a fear does not justify plaintiff's refusal when no evidence was presented that such a fear caused plaintiff to suffer an inability to perform the job safely. Bowden v. Boling Company, 110 N.C. App. 226,429 S.E.2d 394 (1993); N.C. Gen. Stat. § 97-32.
4. Plaintiff's average weekly wage at the time that he sustained a compensable injury by accident on December 31, 1995 was $300.00. N.C. Gen. Stat. § 97-2(5).
5. Plaintiff is entitled to additional temporary total disability compensation in the amount of $66.67 per week for the time period beginning December 31, 1995 through March 29, 1996. N.C. Gen. Stat. § 97-29. Plaintiff is not entitled to continuing temporary total disability since he unjustifiably refused suitable employment. Plaintiff's right to compensation is suspended so long as he continues to refuse suitable employment. N.C. Gen. Stat. § 97-32.
6. Defendant is obligated to provide to plaintiff such medical treatment as is reasonably required as a result of his injury by accident that is reasonably necessary to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. §97-25
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to the plaintiff additional temporary total disability compensation in the amount of $66.67 per week for the time period beginning December 31, 1995 through March 29, 1996. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
2. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
3. Defendant shall pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of his compensable injury when bills for the same have been submitted through the defendant and approved according to procedures adopted by the Industrial Commission.
4. Defendant shall pay the Commission $2,500.00 as sanctions for its failure to file the appropriate Form 21 or Form 60 and for subsequently failing to follow statutory procedures for termination of benefits.
5. Defendant shall pay the costs.
***********
This the ___ day of February 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
LKM/jth