MURPHY, Judge.
 

 *846
 

 *157
 
 Lisa A. Garrett ("Plaintiff") and The Goodyear Tire & Rubber Company ("Goodyear") and Liberty Mutual Insurance Company ("Liberty") (collectively "Defendants") appeal from an Opinion and Award filed 10 February 2017 by the North Carolina Industrial Commission. For the reasons discussed herein, we affirm in part and remand in part.
 

 BACKGROUND
 

 Plaintiff is approximately 56 years old, has a high school diploma, and previously served in the United States Navy. She first worked at the Goodyear plant in Fayetteville beginning on 12 June 2000 until sometime in 2001 when she was laid off. In 2007, Goodyear rehired Plaintiff, and on 15 June 2009, she started a new position with the company as a Production Service Carcass Trucker ("Carcass Trucker"). The Carcass Trucker position required Plaintiff to operate a stand-up, three-wheeled motorized vehicle in an industrial and warehouse setting. The position also included the following physical demands and frequencies:
 

 • One-Hand Pull with Right Hand-15 pounds of force
 

 • Lift, Push, Pull to Change Battery-30 pounds
 

 • Pick Up Fallen Tire-25 pounds
 

 After working approximately one year as a Carcass Trucker, Plaintiff underwent two surgeries, a spinal fusion on 15 October 2010 and a right shoulder surgery on 29 December 2011. On 29 November 2012, Plaintiff's treating physician, Dr. Musante of Triangle Orthopedic Associates, medically released her to return to work, and she resumed employment as a Carcass Trucker with Goodyear
 
 *158
 
 A year later, on 15 December 2013, another employee driving a stand-up vehicle collided with Plaintiff's vehicle. This is the workplace accident triggering Plaintiff's workers' compensation claim and is the subject of this appeal. After the accident, Plaintiff initially resumed working, but she soon started "feeling something weird," and a numbness in the back of her neck. Plaintiff then reported the accident to her supervisor, received treatment at Goodyear, and went to the emergency room. Goodyear completed Industrial Commission Form 19 (Employer's Report of Employee's Injury) and stated it knew of the incident and that Plaintiff received "[m]inor on-site remedies by employer medical staff." Plaintiff then began to see several health care providers for her symptoms.
 

 On 18 December 2013, Plaintiff saw Dr. Perez-Montes, and complained of pain in her neck and back. Dr. Perez-Montes imposed modified work (i.e. "light-duty") restrictions that included "no repetitive bending or twisting, as well as no pulling, pushing, or lifting of more than 15 pounds." Approximately two weeks after the accident, Plaintiff returned to work as a Carcass Trucker, subject to these light-duty restrictions.
 

 Defendants assigned Plaintiff a nurse case manager, who scheduled a 9 April 2014 appointment with a pain management specialist, Dr. Kishbaugh. Dr. Kishbaugh noted that Plaintiff was suffering from "low back and leg pain, cervical and thoracic back pain, and pain in the shoulder region with numbness and tingling involving the arms." Dr. Kishbaugh referred Plaintiff for physical therapy to address her low back pain and suggested she follow up with a neurosurgeon for her neck complaints. On 21 April 2014, Plaintiff visited the office of Dr. David Musante, her treating physician after her 2010 and 2011 surgeries and the doctor who released her for work in November 2012. Plaintiff complained of neck pain to Dr. Musante's Physician's Assistant. X-rays and an MRI scan of her neck and spinal areas were ordered.
 

 Goodyear initially accommodated Plaintiff's light-duty work restrictions, and Plaintiff continued working there as a Carcass Trucker
 
 *847
 
 while she received medical treatment. However, on 12 May 2014, Goodyear notified Plaintiff that it would no longer accommodate her work restrictions. Plaintiff then went on leave and began receiving accident and sickness disability benefits through an employer-sponsored plan.
 

 While on leave, Plaintiff participated in a functional capacity evaluation ("FCE") with physical therapist Frank Murray on 29 October 2014. Two weeks later, on 13 November 2014, Dr. Kishbaugh reviewed the FCE, which concluded that Plaintiff "could perform the physical demands and
 
 *159
 
 essential functions of the ... Carcass Trucker position." Dr. Kishbaugh determined that it was appropriate for Plaintiff to return to work, consistent with the conclusions of the 29 October 2014 FCE. Four days after Dr. Kishbaugh's determination that Plaintiff could return to work, on 17 November 2014, Plaintiff sought and obtained a note from Dr. Musante excusing her from driving the carcass truck. Dr. Musante provided the note due to Plaintiff's "treatment for degeneration of a cervical intervertebral disc." Plaintiff continued to remain out of work.
 

 On 2 January 2015, Plaintiff filed a Form 18 with the Industrial Commission giving notice of her workers' compensation claim to Goodyear. On 29 January 2015, Plaintiff underwent an independent medical evaluation ("IME") with Dr. Jon Wilson upon referral of Goodyear's accident and sickness insurance carrier. Dr. Wilson concluded that Plaintiff could not at the time drive a carcass truck safely, but that she could work full time at a sedentary level. On 13 February 2015, Defendants filed a Form 63 Notice to Employee of Payment of Medical Benefits Only Without Prejudice.
 

 Plaintiff then filed a Form 33 on 22 April 2015, requesting a hearing before the Industrial Commission because "Defendants failed to file any forms" and "treated the claims as compensable." Almost three months later, on 16 July 2015, Goodyear made an employment offer to Plaintiff for the Carcass Trucker position at her prior wages, but Plaintiff refused the offer. Plaintiff later testified that she "did not want to return to work as a [C]arcass [T]rucker because of the bouncing nature of the truck." Goodyear then filed a Form 61 on 18 August 2015, denying liability for the 15 December 2013 incident. This was the same day that the claim was assigned for hearing before Deputy Commissioner Phillip Baddour.
 

 Prior to the 18 August 2015 hearing before the Deputy Commissioner, the parties stipulated that the issues to be heard were:
 

 (a) Whether Plaintiff's claims should be deemed admitted based upon the actions of Defendants?
 

 (b) If not deemed admitted, whether Plaintiff suffered compensable injuries to her neck, low back, and bilateral shoulders?
 

 (c) If so, to what compensation, if any, is Plaintiff entitled?
 

 (d) Whether Dr. Musante should be designated as Plaintiff's authorized treating physician for her neck and low back conditions?
 

 *160
 
 (e) Whether Plaintiff is entitled to attorney's fees pursuant to [N.C.G.S.] § 97-88.1 ?
 

 Deputy Commissioner Baddour filed his Opinion and Award on 23 June 2016 and concluded that both Plaintiff's neck and low back conditions were causally related to the work accident and that she was entitled to total disability compensation from "13 May 2014 to the present and continuing until she returns to work or compensation is otherwise legally terminated." Plaintiff's bilateral shoulder condition was not compensable and she was not entitled to attorney's fees. The Deputy Commissioner's Opinion and Award also stated "[t]he Commission may not prohibit Defendants from contesting compensability of Plaintiff's claims as a sanction for Defendants' failure to timely admit or deny the claims." Defendants then filed a notice of appeal to the Full Commission.
 

 On 10 February 2017, the Full Commission filed its Opinion and Award. The Full Commission considered several evidentiary sources, including Dr. Musante's deposition testimony, the stipulated medical records of Dr. Kishbaugh and Dr. Perez-Montes, as well as Plaintiff's statements and testimony. The Full Commission concluded that Plaintiff's
 
 *848
 
 low back condition was not a compensable injury but her neck condition was. Plaintiff was awarded total temporary disability compensation for her neck injury from 13 May 2014 (the date Goodyear stopped accommodating her light-duty work restrictions) to 16 July 2015 (the date Plaintiff refused Defendants' offer to return to her previous position at the same wages). Plaintiff and Defendants timely appealed this Opinion and Award. Each party alleges that the Full Commission committed several errors, and we address Plaintiff's and Defendants' issues in turn.
 

 STANDARD OF REVIEW
 

 Our review of an Opinion and Award of the Industrial Commission "is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This court's duty goes no further than to determine whether the record contains any evidence tending to support the finding."
 
 Richardson v. Maxim Healthcare/Allegis Grp.
 
 ,
 
 362 N.C. 657
 
 , 660,
 
 669 S.E.2d 582
 
 , 584 (2008) (citation and quotation marks omitted).
 

 PLAINTIFF-EMPLOYEE'S ISSUES ON APPEAL
 

 Plaintiff's appeal is addressed in three parts: (A) preservation of the estoppel issue for review by the Full Commission; (B) causation
 
 *161
 
 of Plaintiff's low back injury; and, (C) Plaintiff's determination of disability.
 

 A. Issue Preservation
 

 Plaintiff first argues that the Full Commission erred in failing to consider her argument that Defendants were estopped from denying the compensability of her claims through their actions. She contends that Defendants waived their right to contest compensability of her claims because subsequent to her Form 18 Notice of Claim filing, Defendants neither admitted liability, denied liability, nor did they file a Form 63 Notice of Payment Without Prejudice regarding the claim within 30 days as required by statute and Industrial Commission Rules.
 
 See
 
 N.C.G.S. § 97-18(j) (2017) ; 04 NCAC 10A.0601 (2017) (titled Employer's Obligations Upon Notice; Denial of Liability; And Sanctions). Plaintiff also argues that after her Form 18 filing, Defendants engaged in a course of conduct, including an allegedly improper use of Form 63 designed "to direct and limit every aspect of [Plaintiff's] medical care to her medical and legal detriment" while "avoiding their legal obligation to admit or deny her claim." Without addressing the merits of Plaintiff's substantive argument, we conclude that the Full Commission erred by failing to address this issue of estoppel because Plaintiff properly raised the issue before the Deputy Commissioner and the Full Commission.
 

 When this case was before the Deputy Commissioner, the parties' pre-trial agreement stipulated the issues to be heard. Stipulation 9 (B) of the pre-trial agreement states that Plaintiff contends the issues to be heard are:
 

 Whether [D]efendant's accepted this claim pursuant to [N.C.G.S.] § 97-18(d), when [D]efendants took a recorded statement, provided medical treatment in the outsourced medical clinic on premises, paid for the emergency room visit, sent [Plaintiff] out for medical treatment and diagnostic studies, and assigned a nurse case manager to the file, and failed to file any Industrial Commission form either accepting or denying this claim in a timely manner and failed to send to the medical providers from whom [D]efendants required [Plaintiff] to treat the mandatory letter stating that they do not accept the claim?
 

 The Deputy Commissioner's Opinion and Award listed the five issues to be heard and one was the issue of whether Goodyear was estopped from denying the compensability of Plaintiff's claims.
 

 *162
 
 (a) Whether Plaintiff's claims should be deemed admitted based upon the actions of Defendants?
 

 However, the Deputy Commissioner did not adjudicate this specific issue. Conclusion of Law 1 of his Opinion and Award only states:
 

 1. The Commission may not prohibit Defendants from contesting compensability of Plaintiff's claims as a sanction for Defendants' failure to timely admit or deny the claims. [N.C.G.S.] § 97-18(j).
 

 *849
 
 When the Full Commission heard this case, it invoked the "law of the case" doctrine and determined that Plaintiff waived the issue because she did not appeal from the Deputy Commissioner's Opinion and Award. The 10 February 2017 Opinion and Award of the Full Commission states:
 

 Plaintiff did not appeal from the [Deputy Commissioner's] Opinion and Award of June 23, 2016 as to the issues of ... whether [D]efendants' actions constitute an acceptance of [P]laintiff's claim ... [.] Accordingly, the Findings of Fact and Conclusions of Law issued by the Deputy Commissioner in the June 23, 2016 Opinion and Award are the law of the case as to those issues from which no appeal was taken by [P]laintiff.
 

 It is well-established that "[t]he law of estoppel does apply in workers' compensation proceedings, and liability may be based upon estoppel to contravene an insurance carrier's subsequent attempt to avoid coverage of a work-related injury."
 
 See e.g
 
 .,
 
 Carroll v. Daniels & Daniels Construction Co
 
 .,
 
 327 N.C. 616
 
 , 620,
 
 398 S.E.2d 325
 
 , 328 (1990). "[E]stoppel requires proof that the party to be estopped must have misled the party asserting the estoppel either by some words or some action or by silence."
 
 Id
 
 . at 621,
 
 398 S.E.2d at 328
 
 (citation omitted). In a workers' compensation proceeding, "the burden is on the plaintiff to show that the [defendants] misled the plaintiff by words, acts, or silence."
 
 Id
 
 .
 

 In
 
 Lewis v. Beachview Exxon Serv.
 
 , we addressed a situation similar to the present case.
 
 174 N.C. App. 179
 
 , 182,
 
 619 S.E.2d 881
 
 , 882 (2005),
 
 rev'd on other grounds
 
 ,
 
 360 N.C. 469
 
 ,
 
 629 S.E.2d 152
 
 (2006). The parties' pre-trial agreement "stipulated that the issues before both the deputy commissioner and the Full Commission included 'whether defendants are estopped from denying plaintiff's pulmonary condition.' "
 
 Lewis,
 

 174 N.C. App. at 182
 
 ,
 
 619 S.E.2d at 882-83
 
 . However, the Opinion and Award included "no findings of fact or conclusions of law regarding waiver or estoppel," and we held that the "Commission failed to consider the
 
 *163
 
 application of the doctrine of estoppel to the factual scenario at hand[ ]" and remanded to the Commission to address the issue.
 
 Id
 
 . at 183,
 
 619 S.E.2d at 883
 
 (citations omitted).
 

 Regarding the "law of the case doctrine," our Supreme Court has stated:
 

 [a]s a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal.
 

 Tennessee-Carolina Transp., Inc. v. Strick Corp
 
 .,
 
 286 N.C. 235
 
 , 239,
 
 210 S.E.2d 181
 
 , 183 (1974) (internal citations and quotation marks omitted). We have further explained that the law of the case doctrine "provides that when a party fails to appeal from a tribunal's decision that is not interlocutory, the decision below becomes the 'law of the case' and cannot be challenged in subsequent proceedings in the same case."
 
 Boje v. D.W.I.T., L.L.C.
 
 ,
 
 195 N.C. App. 118
 
 , 122,
 
 670 S.E.2d 910
 
 , 912 (2009). In
 
 Boje
 
 , the Deputy Commissioner's Opinion and Award included a finding of fact that the defendant did not have workers' compensation coverage on the date of the plaintiff's accident.
 
 Id
 
 . There, the defendant did not appeal the finding to the Full Commission, and we held that this finding was the law of the case and the defendant was "barred from relitigating that issue in subsequent proceedings."
 
 Id
 
 .
 

 However, "[t]he doctrine of the law of the case is not an inexorable command, or a constitutional requirement, but is, rather, a flexible discretionary policy which promotes the finality and efficiency of the judicial process."
 
 Goetz v. N.C. Dep't of Health & Human Servs.,
 

 203 N.C. App. 421
 
 , 432,
 
 692 S.E.2d 395
 
 , 403 (2010) (quotation marks omitted). Moreover, the Full Commission "is not an appellate court" and "[t]he Commission may not use its own rules to deprive a plaintiff of the right to have his case fully determined."
 
 Joyner v. Rocky Mount Mills
 
 ,
 
 92 N.C. App. 478
 
 , 482,
 
 374 S.E.2d 610
 
 , 613 (1988). In
 
 Joyner
 
 , we observed:
 

 *850
 
 [a]lthough it hardly need be repeated, that the "[F]ull Commission" is not an appellate court in the sense that it reviews decisions of a trial court. It is the duty and responsibility of the [F]ull Commission to make detailed
 
 *164
 
 findings of fact and conclusions of law with respect to every aspect of the case before it.
 

 Id.
 

 In the case at bar, Defendants maintain that the issue of whether they should be estopped from denying Plaintiff's claims was not before the Full Commission because Plaintiff did not appeal the Deputy Commissioner's Opinion and Award. However, since there were no findings or conclusions in the Deputy Commissioner's Opinion and Award that addressed the issue of estoppel, the issue was not adjudicated, and there was nothing for Plaintiff to appeal to the Full Commission. Although labeled as a "Conclusion of Law," the Deputy Commissioner's Conclusion of Law 1 is not a legal conclusion because it is not the result of the application of legal principles to evidentiary facts.
 
 See
 

 In re Helms
 
 ,
 
 127 N.C. App. 505
 
 , 510,
 
 491 S.E.2d 672
 
 , 675 (1997) ("As a general rule, however, any determination requiring the exercise of judgment, or the application of legal principles, is more properly classified a conclusion of law."). Rather, Conclusion of Law Number 1 merely paraphrases a statutory provision with potential relevance to the issue of Plaintiff's estoppel claim. It reads:
 

 1. The Commission may not prohibit Defendants from contesting compensability of Plaintiff's claims as a sanction for Defendants' failure to timely admit or deny the claims. [N.C.G.S.] § 97-18(j).
 
 [1]
 

 "While the Commission is not required to make findings as to each fact presented by the evidence, it must find those crucial and specific facts upon which the right to compensation depends."
 
 Lewis
 
 ,
 
 174 N.C. App. at 182
 
 ,
 
 619 S.E.2d at 883
 
 (citation omitted). More specifically, "the Commission must address the issue of estoppel[ ]" when the issue is raised.
 

 Id.
 

 Here the issue of estoppel was raised before the Deputy Commissioner via the pre-trial agreement and in Plaintiff's brief to the Full Commission. Nevertheless, the Full Commission "failed to consider the application of the doctrine of estoppel to the factual scenario at hand."
 
 Id
 
 . Additionally, by invoking the law of the case doctrine, the
 
 *165
 
 Full Commission avoided its duty to "make detailed findings of fact and conclusions of law with respect to every aspect of the case before it."
 
 Joyner
 
 ,
 
 92 N.C. App. at 482
 
 ,
 
 374 S.E.2d at 613
 
 . This deprived Plaintiff of her right to have her case fully and finally determined.
 
 [2]
 
 We remand this matter to the Industrial Commission to consider whether the facts of this case support a conclusion that Defendants should be estopped from denying the compensability of Plaintiff's claims. Should the Full Commission determine that the doctrine of estoppel applies, it should determine whether Defendants are liable for the workers' compensation benefits. The Full Commission should rely on the findings of fact already made and may make any additional findings it deems necessary.
 

 B. Causation of Plaintiff's Low Back Injury
 

 Plaintiff next contends that the Full Commission erred by concluding she failed to
 
 *851
 
 prove that her low back condition was caused by the December 2013 workplace accident. We disagree.
 

 "The claimant in a workers' compensation case bears the burden of initially proving each and every element of compensability, including a causal relationship between the injury and his employment."
 
 Adams v. Metals USA
 
 ,
 
 168 N.C. App. 469
 
 , 475,
 
 608 S.E.2d 357
 
 , 361 (2005) (citations and internal quotation marks omitted). "[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury."
 
 Young v. Hickory Bus. Furniture
 
 ,
 
 353 N.C. 227
 
 , 230,
 
 538 S.E.2d 912
 
 , 915 (2000) (citations omitted). However, "an expert is not competent to testify as to a causal relation which rests upon mere speculation or possibility."
 
 Id
 
 .
 

 We have held that an expert medical opinion stating an accident "could," "might have" or "possibly" caused an injury is generally insufficient to prove medical causation.
 
 See
 

 *166
 

 Carr v. Dep't of Health & Human Servs
 
 .,
 
 218 N.C. App. 151
 
 , 155,
 
 720 S.E.2d 869
 
 , 873 (2012) (citations omitted). However, "supplementing that opinion with statements that something 'more than likely' caused an injury or that the witness is satisfied to a 'reasonable degree of medical certainty' has been considered sufficient" to establish causation under the Workers Compensation Act.
 

 Id.
 

 (citing
 
 Young
 
 ,
 
 353 N.C. at 233
 
 ,
 
 538 S.E.2d at
 
 916 ;
 
 Kelly v. Duke Univ
 
 .,
 
 190 N.C. App. 733
 
 , 740,
 
 661 S.E.2d 745
 
 , 749 (2008) ).
 

 Here, the Full Commission concluded that Plaintiff "failed to present competent medical expert opinion evidence, as required by our case law, to establish a relationship between her low back condition and the December 15, 2013 workplace accident." Plaintiff contends that this conclusion was erroneous because the Full Commission ignored the stipulated medical records of Dr. Perez-Montes and Dr. Kishbaugh, and improperly discounted the medical opinion testimony of Dr. Musante, and characterized it as "speculative." As to both arguments, we disagree.
 

 "It is reversible error for the Commission to fail to consider the testimony or records of a treating physician."
 
 Whitfield v. Laboratory Corp. of Am.
 
 ,
 
 158 N.C. App. 341
 
 , 348,
 
 581 S.E.2d 778
 
 , 784 (2003). In
 
 Whitfield
 
 , the appellant argued that the Commission erred by wholly disregarding the stipulated medical records of the plaintiff's treating physicians.
 
 Id
 
 . at 348,
 
 581 S.E.2d at 783
 
 . We disagreed, and noted that the Commission made numerous findings concerning plaintiff's visits to these doctors.
 
 Id.
 
 at 349,
 
 581 S.E.2d at 784
 
 . The Commission "simply accorded greater weight" to the expert medical opinion of a doctor who provided sworn deposition testimony, as it is entitled to do.
 
 Id
 
 . Similarly, here the Full Commission's Opinion and Award included several findings of fact that reference Plaintiff's stipulated medical records.
 
 [3]
 
 Plaintiff is therefore unable to show that the Full Commission failed to consider these medical records because a number of findings in the Opinion and Award expressly reference these records, the physicians who provided them, and the information contained therein.
 

 *167
 
 Plaintiff also claims that the Full Commission did not give "proper weight" to these stipulated medical records during their review. However, "[i]t is for the Commission to determine ... the weight to be given the evidence, and the inferences to be drawn from it."
 
 Rackley v. Coastal Painting
 
 ,
 
 153 N.C. App. 469
 
 , 472,
 
 570 S.E.2d 121
 
 , 124 (2002). Moreover, when medical records are
 
 *852
 
 stipulated to, the only aspect of the records the parties are stipulating to is their authenticity. In
 
 Hawley v. Wayne Dale Const
 
 ., we noted that "stipulating to the record's authenticity is not the same as stipulating to the accuracy of the diagnosis," nor does such stipulation "preclude taking a deposition, calling the author as a witness or introducing contrary evidence."
 
 Hawley v. Wayne Dale Const
 
 .,
 
 146 N.C. App. 423
 
 , 429,
 
 552 S.E.2d 269
 
 , 273 (2001). Although the medical records of Dr. Perez-Montes and Dr. Kishbaugh were stipulated, nothing would have prohibited these physicians from providing a sworn medical opinion regarding the cause of Plaintiff's lower back condition. However, neither doctor was deposed, and it was for the Full Commission to determine the weight to be given to their records and the inferences to be drawn from them.
 

 Plaintiff's final argument regarding her low back condition is that the Full Commission improperly characterized Dr. Musante's medical opinion as "speculative" because it was based upon a hypothetical. Finding of Fact 27 of the Full Commission stated:
 

 27. The Commission finds that Dr. Kishbaugh, having treated [P]laintiff's low back since April 2014, would have been in the best position to provide an expert medical opinion as to the cause of plaintiff's low back condition. However, neither party obtained deposition testimony or a written opinion from Dr. Kishbaugh as to this issue, and the Commission finds that Dr. Musante's opinion as to the cause of [P]laintiff's low back condition is insufficient to establish a causal relationship between [P]laintiff's low back condition and the work incident of December 15, 2013 given its speculative nature and the fact that Dr. Musante has never evaluated or treated [P]laintiff's low back.
 

 This finding was based on Dr. Musante's deposition testimony, which was in part based on a hypothetical. Regarding Plaintiff's back condition, Dr. Musante testified:
 

 I can only speculate about her back
 
 because I don't have any recollection of symptoms prior to, or knowledge of
 
 *168
 
 her back prior to this accident. I would simply answer in terms of what I've seen here and in a
 
 hypothetical
 
 . If she reported to me she had no history of seeking medical attention for her back and had no problems with her back prior to this accident, and then began to have back and leg symptoms, I would conclude that the accident caused or aggravated most likely some previously asymptomatic lumbar pathology.
 

 While an expert medical opinion based on a hypothetical may be admissible as competent evidence in workers' compensation proceedings, it cannot be based on conjecture and speculation.
 
 See
 

 Haponski v. Constructor's, Inc
 
 .,
 
 87 N.C. App 95
 
 , 100-03,
 
 360 S.E.2d 109
 
 , 112-13 (1987). Additionally, a medical opinion that relies exclusively on the maxim of "
 
 post hoc, ergo propter hoc
 
 " is speculative incompetent evidence of causation.
 
 See
 

 Young
 
 ,
 
 353 N.C. at 232
 
 ,
 
 538 S.E.2d at
 
 916 ;
 
 see also
 

 Pine v. Wal-Mart Assocs. Inc.
 
 , --- N.C. App. ----, ----,
 
 804 S.E.2d 769
 
 , 777 (2017) ("[E]xpert medical testimony based solely on the maxim '
 
 post hoc, ergo propter hoc
 
 '-which 'denotes the fallacy of ... confusing sequence with consequence'-does not rise to the necessary level of competent evidence.").
 

 In
 
 Young
 
 , a medical expert was asked to provide an opinion on whether the plaintiff's fibromyalgia was causally related to a workplace accident.
 
 Young
 
 ,
 
 353 N.C. at 232
 
 ,
 
 538 S.E.2d at 916
 
 . The expert testified:
 

 I think that she does have fibromyalgia and I relate it to the accident primarily because, as I noted, it was not there before and she developed it afterwards. And that's
 
 the only piece of information that relates
 
 the two.
 

 Id
 
 . (emphasis added). Our Supreme Court held that this opinion relied solely on the maxim
 
 post hoc, ergo propter hoc
 
 , and was therefore "not competent evidence of causation."
 
 Id
 
 .
 

 In the instant case, Plaintiff claimed that the December 2013 workplace accident caused a neck injury and a low back injury. However, Dr. Musante only treated Plaintiff for her neck, not for her back, and he had no knowledge of her back condition prior to the
 
 *853
 
 December 2013 workplace accident. Although his opinion regarding the cause of Plaintiff's low back symptoms was based on a hypothetical, which is not incompetent evidence
 
 per se
 
 , Dr. Mustante's testimony demonstrated that his opinion as to causation was based exclusively on the temporal relationship between the date the claimant sought medical attention and the date of the workplace accident. Therefore, Dr. Musante's
 
 post hoc ergo
 

 *169
 

 proper hoc
 
 testimony was insufficient to establish a causal relationship between Plaintiff's low back condition and the December 2013 workplace accident.
 

 Based on the foregoing, the Full Commission did not err by concluding Plaintiff failed to prove that her low back condition was caused by the 15 December 2013 workplace accident.
 

 C. Determination of Plaintiff's Disability
 

 Plaintiff's remaining issue contends that the Full Commission misapplied the law in analyzing her disability claims. We disagree.
 

 A determination of disability is a conclusion of law we review de novo.
 
 Pine
 
 , --- N.C. App. at ----,
 
 804 S.E.2d at 773
 
 . "When the Commission acts under a misapprehension of the law, the award must be set aside and the case remanded for a new determination using the correct legal standard."
 
 Ballenger v. ITT Grinnell Indus. Piping, Inc
 
 .,
 
 320 N.C. 155
 
 , 158,
 
 357 S.E.2d 683
 
 , 685 (1987) (citation omitted);
 
 see also
 

 Weaver v. Dedmon
 
 , --- N.C. App. ----, ----,
 
 801 S.E.2d 131
 
 , 133 (2017) ("A decision by the North Carolina Industrial Commission that contains contradictory factual findings and misapplies controlling law must be set aside and remanded to the Commission[.]"). "Disability" is defined as an "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C.G.S. § 97-2(9) (2017). To support a conclusion of disability, "the Commission must find: (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury."
 
 Hilliard v. Apex Cabinet Co.,
 

 305 N.C. 593
 
 , 595,
 
 290 S.E.2d 682
 
 , 683 (1982) (citing N.C.G.S. § 97-2(9) ). The plaintiff bears the burden of proof to establish disability, but once the plaintiff has done so, the burden shifts to the defendant "to show not only that suitable jobs are available, but also that the plaintiff is capable of getting one, taking into account both physical and vocational limitations."
 
 Wilkes v. City of Greenville
 
 ,
 
 369 N.C. 730
 
 , 745,
 
 799 S.E.2d 838
 
 , 849 (2017) (citations omitted). Additionally, under N.C.G.S. § 97-32, "[i]f an injured employee refuses suitable employment ... the employee shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified." N.C.G.S. § 97-32 (2017).
 

 *170
 
 Plaintiff does not challenge any specific findings made by the Full Commission as unsupported by the evidence. Rather, Plaintiff argues that the Full Commission erred in concluding she was only entitled to temporary disability for her neck injury from 12 May 2014 (the date Goodyear no longer accommodated her "light-duty" work restrictions imposed by Dr. Perez-Montes) to 16 July 2016 (the date Goodyear extended an offer of employment for Plaintiff to return to her previous position as a Carcass Trucker). Plaintiff advances several different theories, none we find prevailing.
 

 Plaintiff first argues that the Full Commission erred by affording greater weight to the medical opinion of Mr. Murray (the licensed physical therapist who conducted Plaintiff's Functional Capacity Evaluation), than the medical opinion of Dr. Wilson. We again note that it is for the Commission to determine the weight to be given the evidence, and the inferences to be drawn from it.
 
 Rackley
 
 ,
 
 153 N.C. App. at 472
 
 ,
 
 570 S.E.2d at 124
 
 . "We will not reweigh the evidence before the Commission[.]"
 
 Beard v. WakeMed
 
 ,
 
 232 N.C. App. 187
 
 , 191,
 
 753 S.E.2d 708
 
 , 711 (2014).
 

 *854
 
 Second, Plaintiff contends that the Full Commission erred by "mechanically" employing the disability methods set forth in
 
 Russell v. Lowes Product Distribution
 
 ,
 
 108 N.C. App. 762
 
 ,
 
 425 S.E.2d 454
 
 (1993).
 
 [4]
 
 Plaintiff is correct in that the
 
 Russell
 
 methods "are neither statutory nor exhaustive" and "are not the only means of proving disability."
 
 Wilkes
 
 ,
 
 369 N.C. at 745
 
 ,
 
 799 S.E.2d at
 
 849 (citing
 
 Medlin v. Weaver Cooke Const., LLC,
 

 367 N.C. 414
 
 , 422,
 
 760 S.E.2d 732
 
 , 737 (2014) ). Nonetheless, the Full Commission's findings and conclusions clearly indicate that it understood that it is not limited to the
 
 Russell
 
 methods to determine if the ultimate standard of disability set forth in
 
 Hilliard
 
 and N.C.G.S. § 97-2(9) is met.
 
 [5]
 
 Moreover, Plaintiff's argument that the Full Commission was "too mechanical" in the application of the
 
 Russell
 
 factors is, in essence, a
 
 *171
 
 request for us to reweigh the evidence, which we will not do.
 
 Hall v. U.S. Xpress, Inc.
 
 , --- N.C. App. ----, ----,
 
 808 S.E.2d 595
 
 , 605 (2017).
 

 Plaintiff also contends that the Full Commission erred by concluding that she unjustifiably refused an offer of suitable employment by refusing to return to her previous position as a Carcass Trucker on 16 July 2015. She challenges Conclusion of Law 5 of the Full Commission's Opinion and Award:
 

 5. Plaintiff admittedly refused to return to her pre-injury job, which defendant employer offered to her by letter of July 16, 2015, despite being released to that job by Dr. Kishbaugh and Dr. Musante based upon the valid and reasonable FCE performed by Mr. Murray. Accordingly, the Commission concludes that [P]laintiff unjustifiably refused suitable employment as of July 16, 2015. [N.C.G.S.] § 97-2(22) (2016).
 

 N.C.G.S. § 97-32 precludes compensation if an injured employee unjustifiably refuses to accept an offer of "suitable employment."
 

 If an injured employee refuses suitable employment as defined by [N.C.G.S. §] 97-2(22), the employee shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified.
 

 N.C.G.S § 97-32 (2017). N.C.G.S. § 97-2(22) defines "suitable employment" as:
 

 employment offered to the employee or ... employment available to the employee that (i) prior to reaching maximum medical improvement is within the employee's work restrictions, including rehabilitative or other noncompetitive employment with the employer of injury approved by the employee's authorized health care provider or (ii) after reaching maximum medical improvement is employment that the employee is capable of performing considering the employee's preexisting and injury-related physical and mental limitations, vocational skills, education, and experience and is located within a 50-mile radius of the employee's residence at the time of injury or the employee's current residence if the employee had a legitimate reason to relocate since the date of injury. No one factor shall be considered exclusively in determining suitable employment.
 

 *172
 
 N.C.G.S. § 97-2(22) (2017), amended by
 
 2015 N.C. Sess. Laws 286
 
 . Accordingly, our review of this argument is limited to determining whether the Full Commission's unchallenged findings of fact support the conclusion that Goodyear made Plaintiff an offer of "suitable employment," and that Plaintiff unjustifiably refused this offer.
 

 *855
 
 By letter dated 16 July 2015, Goodyear offered Plaintiff her pre-injury position as a Carcass Trucker. Plaintiff did not accept this offer. At the time Goodyear made the offer, the unchallenged findings demonstrate that Plaintiff had already been medically cleared by one of her doctors to perform the duties of a Carcass Trucker. This clearance was based on the results of Plaintiff's 29 October 2014 FCE. Specifically, Finding of Fact 17 states:
 

 17. Plaintiff returned to Dr. Kishbaugh on November 13, 2014, at which time he reviewed the FCE by Mr. Murray. As noted by Dr. Kishbaugh, [P]laintiff expressed concern that she would "hurt" after sitting or riding in a truck for a full shift. However, [P]laintiff did not express concerns about cervical rotation needed to drive the carcass truck. Dr. Kishbaugh assessed [P]laintiff at maximum medical improvement ... and encouraged her to discuss retirement versus return to work options with defendant-employer, although it was appropriate for [P]laintiff to return to work per the FCE conclusions.
 

 Plaintiff maintains that assuming arguendo she was physically capable of returning to her pre-injury employment as a Carcass Trucker, it was still error for the Full Commission to conclude that her refusal to accept Goodyear's 16 July 2015 employment offer was unjustifiable. Plaintiff asserts that her refusal to accept Goodyear's employment offer was not "unjustifiable" because she feared she would suffer another injury while working in that position. Plaintiff principally relies on
 
 Bowden v. Boling Co
 
 . to support her argument.
 
 Bowden v. Boling Co
 
 .,
 
 110 N.C. App. 226
 
 ,
 
 429 S.E.2d 394
 
 (1993).
 

 In
 
 Bowden
 
 , the employee worked in a furniture factory and was injured when a machine malfunctioned and collapsed on his left arm, trapping him for forty-five minutes.
 
 Id
 
 . at 228-29,
 
 429 S.E.2d at 395-96
 
 . The accident caused third-degree burns, as well as severe muscle and nerve damage, and the employee was diagnosed as having a 100% disability of his left arm.
 

 Id.
 

 After the employee reached maximum medical improvement, the defendant-employer offered him three jobs in the same factory.
 
 Id
 
 . However, these jobs would have required the employee
 
 *173
 
 to use the same kinds of machines that trapped, injured, and caused him to lose the ability to use his left arm. The Full Commission concluded that the jobs offered by the employer to the employee "were not suitable for his capacity" and that his refusal to accept them did not preclude compensation.
 
 Id
 
 . at 231,
 
 429 S.E.2d at 397
 
 . The employer appealed and argued "that even if [a] plaintiff's fear is reasonable, the fear of returning to work after an injury does not render an employee totally disabled under the Workers' Compensation Act."
 
 Id
 
 . at 231,
 
 429 S.E.2d at 398
 
 . We disagreed and affirmed the Full Commission, reasoning:
 

 if a person's fear of returning to work renders the job unsafe for his performance then it is illogical to say that a suitable position has been offered. Although plaintiff may be able to perform work involving the use of his right arm, the availability of positions for a person with one functional arm does not in itself preclude the Commission from making an award for total disability if it finds upon supported evidence that plaintiff because of other preexisting conditions is not qualified to perform the kind of jobs that might be available in the marketplace. While the positions offered to plaintiff by defendants may in fact be performed by a person with only one functional arm, the question is whether the jobs could be performed safely by this plaintiff.
 

 Id.
 
 at 232-33,
 
 429 S.E.2d at 398
 
 (citation omitted).
 

 The instant case is distinguishable from
 
 Bowden
 
 because it involves a drastically different set of factual circumstances. In
 
 Bowden
 
 , the injured employee lost the ability to use his left arm after a "machine used to steam and bend pieces of wood" collapsed on his arm and trapped him for 45 minutes.
 
 Id
 
 . at 228,
 
 429 S.E.2d at 396
 
 . This injury was so severe that it required treatment at the Burn Unit at North Carolina Memorial Hospital. Here, Plaintiff was operating a low-speed battery-powered utility vehicle (in essence, a forklift) when another Goodyear employee operating a similar vehicle collided with Plaintiff's vehicle. Unlike
 
 Bowden
 
 , Plaintiff did not go to the ER immediately after the
 
 *856
 
 accident. In fact, after the collision, she retained the mental and physical wherewithal to engage in a heated verbal altercation with the employee who struck her vehicle,
 
 [6]
 
 and resume her normal work activity. After
 
 *174
 
 feeling "something weird," and reporting "numbness" to Goodyear's in-house medical staff, Plaintiff went to urgent care, took two weeks off, and came back to work. Then, for the next 15 months, Plaintiff continued to drive the same work vehicle she was operating when the accident occurred. In light of these differences between
 
 Bowden
 
 and the present case, we conclude that
 
 Bowden
 
 is not determinative on this issue.
 

 Plaintiff also contends the Full Commission's Opinion and Award failed to address her argument regarding her fear of driving the carcass truck. We reject this contention and have previously held that:
 

 The Full Commission must make definitive findings to determine the critical issues raised by the evidence, and in doing so must indicate in its findings that it has "considered or weighed" all testimony with respect to the critical issues in the case. It is not, however, necessary that the Full Commission make exhaustive findings as to each statement made by any given witness or make findings rejecting specific evidence that may be contrary to the evidence accepted by the Full Commission....
 
 Such "negative" findings are not required
 
 .
 

 Boylan v. Verizon Wireless
 
 ,
 
 224 N.C. App. 436
 
 , 443,
 
 736 S.E.2d 773
 
 , 778 (2012) (citations omitted) (emphasis added). While it is true that the Full Commission did not make any specific findings regarding any potential effect that Plaintiff's alleged "fear" of operating a carcass truck would have on her ability to safely perform the duties of that job, it is clear that the Full Commission made those findings necessary to support its conclusion that Plaintiff unjustifiably refused Goodyear's offer of suitable employment. Plaintiff's contention that the Commission "failed to address" her fear of driving argument is a request for us to require the Industrial Commission to make "negative findings" to support its conclusion (i.e., Plaintiff was not afraid of driving the carcass truck).
 
 See
 

 id
 
 . This is something we will not do.
 

 As our review of this is limited to determining whether the Full Commission's findings support its conclusions, we hold that that Findings of Fact 17, 31, 32, 33, 34, 35, and 37 adequately support the conclusion that Goodyear made an offer of "suitable employment" and Plaintiff unjustifiably refused this offer. Finding of Fact 17 states that as of 13 November, 2014, Dr. Kishbaugh was of the opinion that "it was
 
 *175
 
 appropriate for plaintiff to return to work per the FCE conclusions." Finding of Fact 31 states that "[b]y letter dated July 16, 2015, ... defendant-employer offered [P]laintiff to return to work in her pre-injury position as a Production Service Carcass Trucker." Finding of Fact 32 states that "Plaintiff did not return to her pre-injury position as offered." Finding of Fact 33 states that "Dr. Musante testified that ... [P]laintiff would not suffer any harm in driving the truck required of her pre-injury job" and though "driving the truck may cause [P]laintiff to suffer a flare in her symptoms and hurt, doing so posed no risk of harm to [P]laintiff." Dr. Musante also testified that "it appeared that Plaintiff was trying to not do that job." Findings of Fact 34 and 35 also demonstrate that Plaintiff's treating physicians believed she was "capable of much more than sedentary-duty work," and the work restrictions recommended in her FCE, if implemented, would allow her to work "in her pre-injury position as a Production Service Carcass Trucker." These findings sufficiently demonstrate that the job offered was "within the employee's work restrictions, including rehabilitative or other noncompetitive employment with the employer of injury approved by the employee's authorized health care provider."
 
 See
 
 N.C.G.S. § 97-2(22) (defining suitable employment).
 
 *857
 
 Furthermore, Finding of Fact 37 supports the conclusion that Plaintiff's refusal to accept Goodyear's offer was unjustifiable. This finding states that Plaintiff "did not want to return to work as a [C]arcass [T]rucker because of the bouncing nature of the truck," and that she testified that she "can't be bounced around like that." Plaintiff's own testimony counters any claim that her refusal was justified under the rationale of
 
 Bowden
 
 , which stands for the proposition that "if a person's fear of returning to work renders the job unsafe for his performance then it is illogical to say that a suitable position has been offered" and that the relevant question is whether the jobs available are jobs that "could be performed safely by this plaintiff."
 
 Bowden
 
 ,
 
 110 N.C. App. at 232-33
 
 ,
 
 429 S.E.2d at 398
 
 . Plaintiff's testimony was that she was "afraid of getting hit again," "afraid of her disk getting worse" and she "can't be bounced around like that." She argues that this evidence clearly establishes that her refusal to return to work as a Carcass Trucker was justified. However, Plaintiff's interpretation of her own testimony is not the only reasonable interpretation, and "[i]t is for the Commission to determine the credibility of the witnesses, the weight to be given the evidence, and the inferences to be drawn from it."
 
 Rackley
 
 ,
 
 153 N.C. App. at 472
 
 ,
 
 570 S.E.2d at 124
 
 .
 

 Accordingly, we affirm the Full Commission's conclusion that Plaintiff unjustifiably refused an offer of suitable employment on 16 July
 
 *176
 
 2016, and was not entitled to disability compensation for her neck injury after that date.
 

 DEFENDANTS' ISSUES ON APPEAL
 

 Defendants raise two issues on appeal. They first argue that the Full Commission erred in concluding that Plaintiff's cervical neck condition is compensable. Defendants also argue that the Full Commission erred by failing to enter sufficient findings to support the conclusion that Plaintiff was disabled from 13 May 2014 to 16 July 2015.
 

 A. Causation of Plaintiff's Neck Injury
 

 Regarding the compensability of Plaintiff's neck injury, Conclusion of Law 3 of the Full Commission's Opinion and Award states:
 

 3. Based on the expert medical opinion of Dr. Musante, the Commission concludes that the workplace accident of December 15, 2013 caused or contributed to [P]laintiff's current neck condition by materially aggravating her preexisting, asymptomatic neck condition, thereby rendering it a compensable injury by accident.
 

 Dr. Musante was Plaintiff's treating physician for her cervical neck condition during her 2011 and 2012 surgeries and also after the December 2013 workplace accident. During his deposition, Dr. Musante testified that it was his opinion that the workplace accident contributed to or aggravated the underlying pre-existing asymptomatic condition in the neck:
 

 Q. What is that opinion?
 

 A. The-my opinion is that the accident contributed to or aggravated an underlying preexisting minimally to asymptomatic condition in the neck ... I can only speculate about her back[.]
 

 ...
 

 Q. And is that medical opinion within a reasonable degree of medical certainty?
 

 A. Yes.
 

 Dr. Musante based this opinion on his treatment history with Plaintiff and his clinical evaluation of her neck injury:
 

 Q. And is that medical opinion based upon your training, your clinical evaluation, your education, your experience,
 
 *177
 
 the medical literature and your familiarity since 2010 with [Plaintiff] and her medical conditions?
 

 A. Yes, for the neck.
 

 ....
 

 A. So it would be-it was based-I was actually treating her for her cervical spine in January. I made my conclusion based upon the history that she provided and the imaging that I had.
 

 ....
 

 Q. Would you say that what takes you from the incident could have been or is a possible cause of her pain to saying more likely than not it is a cause of her pain is
 
 *858
 
 solely the temporal nature of her complaints?
 

 Plaintiff's Counsel: Objection
 

 A. I would say that the temporal nature, the fact that she wasn't seeking attention from me prior to the accident, and then began seeking attention[.]
 

 Defendants argue that Dr. Musante's deposition testimony was insufficient to support the Full Commission's conclusion that Plaintiff's neck condition was a compensable injury. Specifically, Defendants contend that Dr. Musante's testimony only went to whether Plaintiff's "pain complaints" were related to the workplace accident. Defendants also maintain that his testimony was "speculative" because it relied on the temporal nature of Plaintiff's complaint history before and after the incident. As to both theories, we disagree.
 

 Regarding Defendants' theory that Dr. Musante's testimony only went to whether Plaintiff's pain complaints were related to the workplace accident, we initially note that "when treating pain patients, a physician's diagnosis often depends on the patient's subjective complaints, and this does not render the physician's opinion incompetent as a matter of law."
 
 Yingling v. Bank of Am
 
 .,
 
 225 N.C. App. 820
 
 , 836,
 
 741 S.E.2d 395
 
 , 406 (2013) (citations, quotation marks, and alterations omitted). Furthermore, it is well-established that an aggravation of a pre-existing condition can be a compensable injury under the Workers' Compensation Act.
 
 Morrison v. Burlington Indus
 
 .,
 
 304 N.C. 1
 
 , 18,
 
 282 S.E.2d 458
 
 , 470 (1981) (stating that "[a]n employer takes the employee as he finds her with all her pre-existing infirmities and weaknesses" and a workers' compensation claimant can be compensated for the "aggravation
 
 *178
 
 and acceleration of a pre-existing infirmity."). Here, Dr. Musante's medical opinion was that the December 2013 accident "aggravated an underlying preexisting minimally to asymptomatic condition in the neck." This is a compensable injury under the Workers' Compensation Act.
 
 Id
 
 . Moreover, his testimony did not only address Plaintiff's own reports of pain. Dr. Musante testified that his medical opinion was also based on Plaintiff's medical history, MRI images and X-rays.
 

 Similarly, Defendants' contention that Dr. Musante's opinion regarding Plaintiff's neck injury was "speculative" incompetent evidence of causation because it relied on the temporal nature of Plaintiff's complaint history is also without merit.
 
 Young
 
 , discussed in greater detail
 
 supra,
 
 held that "expert medical testimony based
 
 solely
 
 on the maxim '
 
 post hoc, ergo propter hoc
 
 '-which 'denotes the fallacy of ... confusing sequence with consequence'-does not rise to the necessary level of competent evidence."
 
 See
 

 Pine
 
 , --- N.C. App. at ----,
 
 804 S.E.2d at
 
 777 (citing
 
 Young
 
 ,
 
 353 N.C. at 232
 
 ,
 
 538 S.E.2d at
 
 916 ). However, an expert is not always precluded from relying on the temporal sequence of events (e.g. "
 
 post hoc, ergo propter hoc
 
 ") in forming his or her opinion as to the cause of a claimant's injury. For example, in
 
 Pine
 
 , we distinguished that case from
 
 Young
 
 "[b]ecause a full review of [the expert's] testimony demonstrate[d] that his opinion
 
 was based on more than merely post hoc, ergo propter hoc
 
 , and went beyond a 'could' or 'might' testimony[.]"
 
 Pine
 
 , --- N.C. App. at ----,
 
 804 S.E.2d at 778
 
 (emphasis added).
 

 Here, Dr. Musante did consider the temporal relationship between the date of Plaintiff's workplace accident and the dates she sought medical attention. However, the temporal sequence of events was not the only factor he considered. Unlike his opinion regarding the cause of Plaintiff's low back condition, Dr. Musante's opinion regarding the cause of Plaintiff's neck injury was not based "solely" on
 
 post hoc, ergo propter hoc
 
 reasoning. Dr. Musante was Plaintiff's treating physician for her neck condition and had been since 2010. He also conducted physical exams of Plaintiff and reviewed MRI images. Relying on all of this information, in addition to the temporal sequence of events surrounding the December 2013 workplace accident, Dr. Musante testified that it was his medical opinion "within a reasonable degree of medical certainty" that the workplace accident caused Plaintiff's neck injury. This medical opinion was based on more than mere speculation.
 

 *859
 
 Our role is "limited to reviewing whether
 
 any competent evidence
 
 supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law."
 
 Deese v. Champion Int'l Corp
 
 .,
 
 352 N.C. 109
 
 , 116,
 
 530 S.E.2d 549
 
 , 553 (2000) (emphasis
 
 *179
 
 added). In light of this role, we conclude that Dr. Musante's testimony supported the conclusion that the aggravation of Plaintiff's pre-existing neck condition was caused by the December 2013 workplace accident and was a compensable injury.
 

 B. Temporary Disability Determination
 

 The Full Commission concluded that Plaintiff was entitled to temporary total disability compensation for the period of 13 May 2014 to 16 July 2015 for her neck injury. Defendants argue that the Commission erred by failing to enter sufficient findings to support the conclusion that Plaintiff was disabled from 13 May 2014 to 16 July 2015. We agree and conclude that the Commission failed to make sufficient findings regarding the effect that Plaintiff's compensable neck injury had on her ability to earn wages between 13 May 2014 and 16 July 2015.
 

 A determination of disability is a conclusion of law we review de novo, and "the claimant has the burden of proving the existence of his disability and its extent."
 
 Hendrix v. Linn-Corriher Corp.
 
 ,
 
 317 N.C. 179
 
 , 185,
 
 345 S.E.2d 374
 
 , 378 (1986). In addition to proving that a compensable injury occurred as the result of a workplace accident, a plaintiff must also prove (1) she was "incapable after her injury of earning the same wages earned prior to injury in
 
 the same employment
 
 ," (2) she was "incapable after her injury of earning the same wages she earned prior to injury in
 
 any other employment
 
 ," and (3) her "incapacity to earn wages was caused by [her] injury."
 
 Hilliard
 
 ,
 
 305 N.C. at 595
 
 ,
 
 290 S.E.2d at 683
 
 (emphasis added). "After the plaintiff meets her burden to establish disability, the burden shifts to the employer to show not only that suitable jobs are available, but also that the [employee] is capable of getting one, taking into account both physical and vocational limitations."
 
 Cross v. Falk Integrated Techs., Inc
 
 .,
 
 190 N.C. App. 274
 
 , 279,
 
 661 S.E.2d 249
 
 , 253-54 (2008) (citations omitted). "An employer can overcome the presumption of disability by providing evidence that: (1) suitable jobs are available for the employee; (2) that the employee is capable of getting said job taking into account the employee's physical and vocational limitations; (3) and that the job would enable employee to earn
 
 some
 
 wages."
 
 Id
 
 . (emphasis added).
 

 We have often stated that the Commission must make specific findings that address the "crucial questions of fact upon which plaintiff's right to compensation depends."
 
 Wilkes
 
 ,
 
 369 N.C. at 746
 
 ,
 
 799 S.E.2d at
 
 850 (citing
 
 Guest v. Brenner Iron & Metal Co
 
 .,
 
 241 N.C. 448
 
 , 451,
 
 85 S.E.2d 596
 
 , 599 (1955) );
 
 see also
 

 Singleton v. Durham Laundry Co
 
 .,
 
 213 N.C. 32
 
 , 34-35,
 
 195 S.E. 34
 
 , 35 (1938) ("It is the duty of the Commission
 
 *180
 
 to make such specific and definite findings upon the evidence reported as will enable this Court to determine whether the general finding or conclusion should stand, particularly when there are material facts at issue.").
 

 For example, in
 
 Carr
 
 , like the instant case, the Commission concluded that the plaintiff was entitled to temporary total disability.
 
 Carr
 
 ,
 
 218 N.C. App. at 151
 
 ,
 
 720 S.E.2d at 869
 
 . We remanded because the Commission failed to make necessary findings. Specifically, we held that before the Commission could conclude that the claimant was entitled to temporary total disability compensation, it must make findings as to "whether plaintiff has made a reasonable effort to obtain employment, but been unsuccessful, or that it would be futile for plaintiff to seek work because of preexisting conditions."
 
 Id
 
 . at 158,
 
 720 S.E.2d at 875
 
 . We reached this result because the medical evidence did not show claimant was incapable of working in any employment.
 
 Carr
 
 ,
 
 218 N.C. App. at 157
 
 ,
 
 720 S.E.2d at 875
 
 .
 

 More recently, in
 
 Wilkes v. City of Greenville
 
 , our Supreme Court remanded a decision of the Commission because the Commission did not make any findings addressing how the plaintiff's injury "may have affected his ability to engage in wage-earning activities."
 
 Wilkes
 
 ,
 
 369 N.C. at 747-48
 
 ,
 
 799 S.E.2d at 850
 
 . The plaintiff in
 
 Wilkes
 
 was employed
 
 *860
 
 as a landscaper and was injured in a motor vehicle accident during the course of employment.
 
 Id
 
 . at 732,
 
 799 S.E.2d at 841
 
 . In concluding that the plaintiff was disabled, the Commission found that he had suffered "severe tinnitus" as the result of the accident.
 
 Id
 
 . at 732,
 
 799 S.E.2d at 841
 
 . However, while the Commission's findings indicated that the plaintiff had "numerous pre-existing limitations" that affected his ability to earn wages in other employment after the workplace accident,
 
 [7]
 
 "the Commission made no related findings on how the plaintiff's compensable tinnitus ... affected his ability to engage in wage-earning activities."
 
 Id
 
 . Our Supreme Court remanded to the Commission to "take additional evidence if necessary and to make specific findings addressing the plaintiff's wage-earning capacity, considering his compensable tinnitus in the context of all the pre-existing and coexisting conditions bearing upon his wage-earning capacity."
 
 Id
 
 .
 

 In the present case, the Full Commission concluded that Plaintiff 's neck injury was compensable, and that she was entitled to temporary
 
 *181
 
 total disability for her neck injury. The findings of the Commission support the conclusion that Plaintiff was unable to earn the same wages in the "same employment" during the period of temporary total disability because Goodyear no longer accommodated her light-duty work restrictions after 13 May 2014. However, the Opinion and Award does not sufficiently address how Plaintiff's neck injury affected her ability to engage in all wage-earning activities after 13 May 2014. The evidence before the Commission did not show that Plaintiff was incapable of working in any employment between the dates of 13 May 2014 and 16 July 2015. Plaintiff's "light-duty" work restrictions only required her to refrain from some, but not all work activities.
 
 [8]
 
 Also, as of 29 January 2015, Plaintiff's doctors believed she was capable of working full time in a sedentary position. Like
 
 Carr
 
 , the evidence here showed that Plaintiff was not incapable of working in any employment. However, the Full Commission failed to make any findings addressing whether after a reasonable effort on Plaintiff's part, she had been unsuccessful in her effort to obtain employment, or it would have been futile for her to seek other employment. As such, there are no findings addressing whether Plaintiff had any limitations that precluded her from obtaining
 
 "any other employment
 
 " at the same wages.
 
 Hilliard
 
 ,
 
 305 N.C. at 595
 
 ,
 
 290 S.E.2d at 683
 
 (emphasis added). As in
 
 Carr
 
 , we cannot determine what evidence Plaintiff introduced to meet her burden to show that her inability to find equally lucrative work in any other employment between the dates of 13 May 2014 and 16 July 2015 was caused by her compensable neck injury.
 

 Based upon the record before us, we cannot affirm the award. Accordingly, we remand this case to the Commission. On remand, the Commission shall make specific findings addressing Plaintiff's wage-earning capacity, considering her compensable neck injury in the context of all the preexisting and coexisting conditions, as well as all vocational limitations bearing upon her wage-earning capacity.
 

 CONCLUSION
 

 We affirm in part and remand in part. We affirm the Commission's conclusions that: (1) Plaintiff failed to prove that her low back condition was caused by the December 2013 workplace accident; (2) Plaintiff met her burden to establish that her neck condition was caused by the December 2013 workplace accident; and (3) the Full Commission did not err in concluding that Plaintiff's refusal of Goodyear's 16 July 2015 employment offer was unjustified. We remand this matter to the
 
 *182
 
 Industrial Commission to: (1) to consider whether the facts of this case support a conclusion that the employer or the insurance carrier should be estopped from denying coverage; and (2) to make specific findings addressing Plaintiff's wage-earning capacity between the dates of 13 May 2014 and 16 July 2015.
 
 *861
 
 AFFIRMED IN PART; REMANDED IN PART.
 

 Judges CALABRIA and ZACHARY concur.
 

 [1]
 

 Specifically, N.C.G.S. § 97-18(j) provides that the Commission may order reasonable sanctions against an employer that does not, within 30 days following the notice of an employee's claim from the Commission either admit, deny, or initiate payments without prejudice and when such sanctions are ordered, "shall not prohibit the employer or insurer from contesting the compensability of or its liability for the claim." N.C.G.S. § 97-18(j) (2017).
 

 [2]
 

 Defendants also argue that Plaintiff waived the issue of whether her claims should be deemed admitted based upon the actions of Defendants because she did not submit a Form 44 Application for Review to the Full Commission.
 
 See
 
 04 NCAC 10A.0701(d) (April 2018). Since Plaintiff did not appeal any finding or conclusion of the Deputy Commissioner to the Full Commission, from a procedural standpoint, Plaintiff was the appellee before the Full Commission. The Industrial Commission rules do not require an appellee to submit a Form 44, only the appellant.
 
 See
 
 04 NCAC 10A.0701(e) (April 2018). The appellee is, however, required to submit a brief, and Plaintiff did submit a brief raising the specific issue of whether Plaintiff's claims should be deemed admitted based upon the actions of Defendants.
 

 [3]
 

 The Full Commission's consideration of Dr. Perez-Montes and Dr. Kishbaugh's medical records is evinced by Findings of Fact 7, 8, 9, and 10.
 
 See
 
 I.C. No. 13-007190, N.C. Indus. Comm'n,
 
 Opinion And Award
 
 , p. 8 (Feb. 10 2017) ("7. On December 18 2013, [P]laintiff presented to Dr. Marcelo R. Perez-Montes ... for follow-up after her work incident of December 15, 2013 ... He diagnosed musculoskeletal pain and cervical spasm");
 
 Id
 
 . at 9 ("8. Dr. Perez-Montes ordered a lumbar spine MRI [.]");
 
 Id
 
 . ("9. ... Dr. Perez Montes diagnosed degenerative disc disease /facet syndrome of the lower spine and referred [P]laintiff to pain management treatment.");
 
 Id
 
 . ("10. At Plaintiff's initial appointment on April 9, 2014, Dr. Kishbaugh noted low back and leg pain, cervical and thoracic back pain, and pain in the shoulder region with numbness and tingling involving the arms.").
 

 [4]
 

 Under
 
 Russell
 
 , the employee may prove disability "in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury."
 
 Russell
 
 ,
 
 108 N.C. App. at 765
 
 ,
 
 425 S.E.2d at 457
 
 (internal citations omitted).
 

 [5]
 

 Conclusion of Law 4 of in the Full Commission's Opinion and Award states that the "
 
 Russell
 
 factors are not exhaustive and do not preclude the Commission from considering other means of satisfying the ultimate standard of disability set forth in
 
 Hilliard
 
 .
 
 See
 

 Medlin v. Weaver Cooke Const., LLC
 
 ,
 
 367 N.C. 414
 
 ,
 
 760 S.E.2d 732
 
 (2014)."
 

 [6]
 

 Plaintiff made a recorded statement at her home to a Liberty Mutual Insurance representative, and recounted the altercation as follows: "[a]ll right, someone slammed into me ... I saw a flash of person flying by going up the main aisle[.] ... he came flying back, jumped out of his truck and came at me telling me 'I was a cunt from hell, I was a bitch that needed to be put down' and I told him to 'take your tiny dick and move on.' ... We had a confrontation for some time."
 

 [7]
 

 For example, the plaintiff in
 
 Wilkes
 
 was over the age of sixty, had an IQ under 70, and had a limited education and work experience.
 
 Wilkes
 
 ,
 
 369 N.C. at 745
 
 ,
 
 799 S.E.2d at 849
 
 .
 

 [8]
 

 Plaintiff's work restrictions required her to refrain from repetitive bending and twisting, and the pulling, pushing, or lifting of more than 15 pounds.